UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

PML NORTH AMERICA, LLC

                Plaintiff,                Case Number: 05-CV-70404-DT
vs.                                       Honorable: Robert H. Cleland

HARTFORD UNDERWRITERS INS. COMPANY

                Defendant.
_____/

**PLAINTIFF'S MOTION FOR ISSUANCE
OF TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

      PML North America, LLC, ("PML"), through its undersigned counsel, moves this Court pursuant to Fed.R.Civ.P. 65 for a Temporary Restraining Order and Preliminary Injunction against Defendant Hartford Underwriters Ins. Company ("Hartford"). In support of this Motion, PML relies on the Federal Rules of Civil Procedure, the pleadings filed by PML in this case and the Brief submitted herewith.

      WHEREFORE, PML requests that Hartford Underwriters Insurance Company be ordered to issue directly, legitimate Certificates of Liability Insurance for worker's compensation coverage, pursuant to Policy #0351B15303, listing as insureds PML North America, LLC and the entities listed on Exhibit A to the proposed Order.

                                                        Respectfully submitted,
                                                          **BUTZEL LONG**

                                                          By: _____
                                                            **James J. Giszczak (P46917)**
                                                            **Michael G. Latiff (P51263)**
                                                            150 West Jefferson, Ste. 100
                                                            Detroit, MI 48226-4450
                                                            313/983-7475
                                                            **Attorneys for Plaintiff**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

PML NORTH AMERICA, LLC

          Plaintiff,          Case Number: 05-CV-70404-DT
vs.                                 Honorable: Robert H. Cleland

HARTFORD UNDERWRITERS INS. COMPANY

          Defendant.
_____/

**BRIEF IN SUPPORT OF MOTION FOR ISSUANCE
OF TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**INTRODUCTION**

On February 2, 2005, Plaintiff filed the underlying insurance coverage action against Hartford Underwriters Insurance Company ("Hartford") seeking to invoke workers compensation coverage pursuant to a policy that was purchased for the benefit of PML North America ("PML") from Hartford. Due to accumulating claims and requests from various state agencies for proof of insurance, it has become imperative that PML bring the instant Motion, requesting a temporary restraining order and preliminary injunction to avoid the irreparable harm that will result from allowing this case to simply proceed on a normal timeline through the court process.

**BACKGROUND FACTS**

PML is a holding company which is in the business of obtaining and providing insurance for numerous professional employer organizations ("PEO"), including a number of PEOs for which PML is the majority owner. Part of PML's obligation and agreement with its PEOs is to obtain workers compensation insurance for the PEOs, as well as the PEO's clients.

By way of background, PEOs, in this case companies such as Worldwide Personal Services of Virginia, LLC ("Worldwide") and Alliance Staff Services, Inc. ("Alliance")[1], enter into co-employment arrangements with existing businesses in order to centralize and coordinate human resources and to obtain better insurance rates for these businesses.[2]

A typical example of how a PEO operates and benefits a client is as follows. Alliance, as a PEO, entered into a co-employment situation with a New Jersey company, West Valley Restoration ("West Valley"). As a result, both Alliance and West Valley are the co-employers of West Valley's employees. These employees are insured for worker's compensation coverage by Alliance via Alliance's contract with PML to obtain worker's compensation insurance. PML obtained insurance for a number of PEOs, their owners, including PML, and their clients, at a lower rate than any of the businesses could obtain independently.

In the Fall of 2004, PML was notified by their existing workers compensation insurer, The Accident Fund of Michigan ("Accident Fund"), that the Accident Fund was reducing the number of states in which it was providing insurance. Therefore, in certain states in which PML's PEOs were operating, it was necessary for PML to obtain workers compensation insurance through a separate insurer. To this end, PML entered into a workers compensation coverage agreement with ACG Enterprises of NC, Inc., ("ACG"), a North Carolina entity, to obtain the necessary workers compensation insurance for PML and its PEOs. An agreement in this regard was entered and became effective on November 17, 2004. ACG, in turn, had its insurance agent, RTP Insurance of Durham,

---

[1] Alliance Staff Services, Inc. also does business as Alliance Savings Company.
[2] PML North America is the 51% majority shareholder in these PEOs. PML is also the majority owner/shareholder of Worldwide Personnel Services of Maine, Inc. and United Personnel Services.

3

North Carolina ("RTP Insurance"), obtain this insurance for the benefit of PML and its PEOs.  RTP Insurance obtained a policy of insurance through Hartford Underwriters Insurance Company, Policy #0351B15303 (the "Hartford Policy"), which is the subject of the instant complaint.

This Hartford Policy was purchased, and PML has paid the premiums on the Hartford Policy.  Attached as **Exhibit A** are numerous certificates of liability insurance issued on the Hartford Policy indicating that the insurance was produced through RTP Insurance and insures ACG, PML and a variety of the PEOs including Alliance. Additionally, Hartford sent RTP Insurance a letter verifying that there was worker's compensation coverage pursuant to the Hartford Policy, Number 0351B15303, for a PEO.  (See **Exhibit B**).

Despite the coverage indicated with Certificates of Liability Insurance ("Certificates") attached as **Exhibit A**, at some time in late December 2004 or early January 2005, demands for additional Certificates for the same PEOs, as well as others, started to be denied by Hartford.  As a result, all of the entities who were to be covered, as bargained for when the insurance coverage was obtained, and who are covered under the Hartford Policy, have been unable to provide the necessary proof of insurance. Further, Hartford has not memorialized or articulated their basis for such a refusal or denial.

As a direct consequence and result of Hartford's refusal to issue the Certificates on this policy, the PEOs in which PML is the majority owner, have been unable to provide verification of workers compensation coverage, despite the fact that the premiums for the Hartford Policy have been paid in full.  As a direct result of this

inability to provide proof of insurance, state agencies in Virginia, Oklahoma, Maine, Nebraska, Missouri and others have threatened the immediate shut down and lock out of operations for these companies unless they can provide, forthwith, Certificates establishing coverage through Hartford or some other insuring entity.

Attached as **Exhibit C** is the Affidavit of PML's owner, James Shelton, confirming that PML's business operation is in jeopardy of being shut down due to Hartford's refusal to provide Certificates verifying the Hartford Policy that has been purchased. James Shelton is the majority shareholder of PML and executed the contract with ACG to obtain the worker's compensation insurance for PML and its PEOs.

The Hartford Policy that was obtained by ACG, through its agent RTP Insurance, provides workers compensation coverage commencing on November 17, 2004 and continuing for a 12 month period. Mr. Shelton received Certificates on the Hartford Policy, from Hartford, indicating that the insured parties include, ACG, PML, as well as the various PEOs and their co-employment clients, which are attached as **Exhibit A**. However, many other clients are covered by the Hartford Policy and need Certificates to verify their coverage. As a result of Hartford's refusal to provide verification of coverage, these entities are under threat of being shut down for failure to provide proof of worker's compensation liability coverage for the past two months, and in some instances, cannot be compensated for the work performed over the past several months until such time as they verify to the Insurance Bureaus for their various state agencies, that they were in fact covered for worker's compensation insurance from November 17, 2004 through the current date. These clients, are now in the position of not being able to verify the liability coverage, and therefore, are reneging on their obligation to pay worker's

5

compensation premiums to the PEOs and PML, because no Certificates are being provided by Hartford. These failures to pay are causing the PEOs, for which PML is a majority shareholder, to face shut downs or lock out by the various state agencies. If the state agencies execute on these threats, as they have indicated they will, the harm resulting to PML, and its PEOs, will be immeasurable.

Without question, PML, and its PEOs, will suffer irreparable harm in the event Hartford maintains its obstinate refusal to issue Certificates on the Hartford Policy that has been purchased. Hartford has issued several Certificates to PEOs and business entities in numerous states, including New Jersey, Rhode Island, Oklahoma, Nebraska, Missouri, Virginia and Maryland. Many other PEOs and business entities are facing "complete business jeopardy" due to Hartford's refusal to issue verifications of coverage, and are in the same states as the entities who have been able to obtain Certificates of Liability Coverage. (See **Exhibit A**). The above scenario forms the basis for the relief requested in the form of a Temporary Restraining Order and Preliminary Injunction.

## ARGUMENT

### A. A Temporary Restraining Order is Warranted

Pursuant to Federal R. Civ. P. 65, a temporary restraining order may be granted where it appears that "immediate and irreparable injury, loss or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition." In *Niedzialek v Barbers Union*, 331 Mich. 296; 49 NW2d 273 (1951), the Michigan Supreme Court set forth the basis for temporary injunctive relief:

> In granting or withholding injunctive relief pendent lite in a case of this character it is highly proper and quite essential for a court to consider whether the rights of the respective litigants will best be subserved by granting temporary

> injunctive relief if sought. If the personal rights or the property rights involved will be best preserved by granting temporary injunctive relief in a suit presenting issues of controverted merit, such relief should be granted.

*Niedzialek*, 331 Mich. at 300-301 (citations omitted).

Hartford's improper refusal to provide the Certificates is causing serious and irreparable harm in the form of, loss of customer goodwill, loss of customer base and loss of PML's competitive edge. Unless immediately restrained by this Court's temporary restraining order, Hartford will continue to act in breach of contract, causing PML to suffer immediate, permanent and irreparable harm and injury. Therefore, PML respectfully requests that this Court issue a temporary restraining order as set forth in PML's motion.

### B. PML Will Satisfy The Standard For a Preliminary Injunction

The purpose of a preliminary injunction is to protect the status quo pending final determination of the lawsuit. *University of Texas v Camenisch*, 451 U.S. 390; 101 S. Ct. 1830; 68 L. Ed. 2d 175 (1981). A Plaintiff may obtain a preliminary injunction by demonstrating to the Court that the defendant is acting in a manner that will irreparably injure Plaintiff or that will render a final judgment on the merits ineffectual. *In re: DeLorean Motors Co.*, 755 F2d 1223, 1229 (6th Cir. 1985). The court will analyze the following four factors in determining whether to issue a preliminary injunction:

(1) The likelihood of Plaintiff's success on the merits;

(2) Whether the injunction will save the Plaintiff from irreparable injury;

(3) Whether the injunction would harm others; and

7

>(4) Whether the public interest would be served by the injunction.

*Superior Consulting Co., Inc. v Walling*, 851 F. Supp. 839, 846 (E.D. Mich. 1994) (citing *DeLorean, Supra* at 1228.) The four factors are to be balanced; they are not prerequisites that must be met. *DeLorean, Supra* A preliminary injunction should issue if the moving party "at least shows serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to defendant if an injunction is issued." *Little Caesar Enterprises v R-J-L Foods*, 796 F. Supp. 1026, 1030 (E.D. Mich. 1992), citing *Frisch's Restaurants, Inc. v Shoney's, Inc.*, 759 F2d 1261, 1270 (6th Cir. 1985) (citations omitted).

PML can successfully demonstrate that it has a likelihood of succeeding on the merits of its claims, that it will be irreparably harmed if Hartford's violative conduct is not immediately enjoined, that the harm to PML outweighs any possible harm there might be to Hartford, and that granting the preliminary injunction serves the public interest.

**1.     PML Will Be Successful On The Merits Of Its Claims Because Hartford Has Breached its Contract And Been Unjustly Enriched.**

PML will prevail on the merits of its breach of contract claim because Hartford has failed to provide the Certificates as required under its insurance contract with PML. Specifically, Hartford was paid a full year's premium to provide PML, and PML's PEOs, workers compensation insurance. Although Hartford initially issued a number of Certificates, Hartford refused to do so in late December 2004, or early January 2005. (See **Exhibit C**, Affidavit of James Shelton). Hartford's refusal to provide Certificates constitutes a breach of the Hartford Policy. As a result of Hartford's actions, PML will

succeed on the merits of its breach of contract claim and declaratory action, thus making injunctive relief appropriate. Moreover, PML will also prevail on its unjust enrichment claim. PML has paid Hartford the requested premiums for the Harford Policy. Hartford has retained these premiums, but is refusing to provide the agreed upon coverage, and proof of coverage in the form of the Certificates. Thus, Hartford is being unjustly enriched.

### 2.  If Preliminary Injunctive Relief Is Not Granted, PML Will Suffer Irreparable Injury.

The facts demonstrate that PML will suffer irreparable injury if a preliminary injunction is not granted. In discussing irreparable harm, the Michigan Supreme Court has noted that:

> An injury to be irreparable need not be such as to render its repair physically impossible; but it is irreparable when it cannot be adequately compensated in damages, or when there exists no certain pecuniary standard for the measurement of damages due to the nature of the right or property injured.

*Ainsworth v Hunting & Fishing Club*, 153 Mich. 185; 116 N.W. 99 (1908) (citations omitted). Similarly, in *Superior v Walling, Supra*, the Court stated that "[l]oss of customer goodwill and fair competition can support a finding of irreparable harm. Such losses are difficult to calculate." *Superior, Supra* at 847.

PML will suffer irreparable injury if Hartford's refusal to provide the Certificates is not enjoined. Hartford's improper refusal to provide these Certificates has put into jeopardy close to a hundred business entities and operations, as the PEOs and their clients, will be negatively impacted. As set forth in the Affidavit of James Shelton (**Exhibit C**), PML's PEOs, as well as the various PEOs clients, are being threatened with

9

imminent shutdown of their operations until such time as they can provide Certificates indicating that they have, and had, workers compensation coverage. In the event Hartford does not produce Certificates, as contractually required, these entities will be shutdown, and the resulting losses will be impossible to quantify or measure.

Should the PEOs, which PML is the majority shareholder, be forced to shutdown, they will suffer an immediate loss of customer goodwill and competitive edge, in addition to a complete loss of revenue, all resulting in their inability to continue business operations. Loss of customer goodwill has been held to constitute irreparable injury, "because realistically it would not be possible to measure plaintiff's actual loss of customers and goodwill that will necessarily occur." *Chem-Trend v McCarthy*, 780 F. Supp. 463 (E.D. Mich. 1991) (citations omitted). Consumer goodwill "is not legitimately available for any amount of money and [PML] could acquire it from nowhere else." *Id.* As in *Chem-Trend,* and *Superior*, PML's PEOs' consumer goodwill has been developed over a considerable period of time and at significant expense to PML and its PEOs.

Moreover, as workers compensation claims continue to accumulate from November 17, 2004 to the present, the ability to cover these claims will be at issue, as PML does not have unlimited resources independent of the Hartford Policy which it has purchased.

In this case, the type of harm PML has shown it will suffer is "non-compensable" for which no measure of damages can be determined with any degree of certainty. Thus, injunctive relief is required.

### 3. The Harm To PML If A Preliminary Injunction Is Denied Outweighs The Harm To Hartford If It Is Granted.

In balancing the hardships in this case, the potential irreparable harm to PML from Hartford's actions outweighs any adverse consequences to Hartford should an injunction be issued. There would be minimal, if any, hardship to Hartford if it is required to issue the contracted for Certificates. Hartford has a contractual obligation to do so. If this Court grants PML's motion, and issues a preliminary injunction, Hartford will simply be enjoined from breaching its contract with PML. Moreover, to the extent this Court were to ultimately decide that PML, and its PEOs, were not entitled to the workers compensation insurance through Hartford, any losses paid out by Hartford could be easily quantified.

PML has spent years and a tremendous amount of resources developing its PEOs, and their customer bases and customer goodwill, which are their principal business assets, and their means of generating revenue. PML's PEOs' investment in time and resources over the years has created significant customer relationships and anticipated clientele for PML's PEOs. The potential and actual loss to PML if Hartford is not restrained is extraordinary and incalculable, in its entirety. It is contrary to the most fundamental notions of fair play that Hartford be allowed to destroy PML's competitive position through its wrongful and contractually forbidden actions.

The injunction requested by PML merely prevents Hartford from continuing its wrongful acts. Since Hartford has breached the provisions of the Hartford Policy, to deny PML injunctive relief would amount to a nullification of its rights under the contract. See *Merrill Lynch, Pierce, Fenner & Smith, Inc. v Ran*, 67 F. Supp. 2d 764, 780 (E.D. Mich. 1999).

Should the injunction be granted in error, Hartford's loss will be minimal, if any, and would certainly be quantifiable. On the other hand, the loss to PML, and PML's PEOs, of their competitive edge, customer goodwill and customer base is incalculable. Thus, the harm to PML should this Court deny a preliminary injunction outweighs any potential harm to Hartford should it be granted.

### 4. The Public Interest Supports The Issuance Of A Preliminary Injunction.

The object of a preliminary injunction is "to preserve the status quo (i.e., the uncontested status which precedes the pending controversy)". *Detroit v Salaried Phys, UAW*, 165 Mich. App. 142, 151; 418 NW2d 679 (1987). In this case, the status quo to be preserved is the status which preceded Hartford's violative conduct. In other words, Hartford providing Certificates. A temporary restraining order and preliminary injunction would simply assure that no further injury will result to PML pending a final hearing on the merits. Thus, the public interest supports not only the enforcement of reasonable agreements, but also the enjoining of violations of such agreements prior to a trial.

## **CONCLUSION**

For the reasons set forth herein, PML requests the relief set forth in the accompanying Motion for Temporary Restraining Order and Preliminary Injunction.

Respectfully submitted,

**BUTZEL LONG**

By: _____
**James J. Giszczak (P46917)**
**Michael G. Latiff (P51263)**
150 West Jefferson, Ste. 100
Detroit, MI 48226-4450
313/983-7475
**Attorneys for Plaintiff**

Dated: February 21, 2005

734492