UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PML NORTH AMERICA, LLC,

        Plaintiff,

                                   Case No. 05-CV-70404-DT

v.

                                   Hon. Robert H. Cleland

HARTFORD UNDERWRITERS
INSURANCE COMPANY, ACG
ENTERPRISES OF NC, INC. and
RTP INSURANCE OF DURHAM, NC,

        Defendants.

---

BUTZEL LONG
Michael G. Latiff (P51263)
Maureen T. Taylor (P63547)
Katherine Donohue Goudie (P62806)
150 West Jefferson, Suite 100
Detroit, MI  48226-4450
(313) 225-7000
Attorneys for Plaintiff

John Edward Gilchrist, pro se
3325 Chapel Hill Blvd., Suite 145
Durham, NC  27707
(919) 401-6556
Defendant RTP Insurance of Durham, NC

Keith Bishop, Esq. (N.C. Bar No. 18918)
Madison Center, Suite 105
1802 Martin Luther king, Jr. Parkway
Durham, North Carolina  27707
(919) 490-1855
Attorney for Defendant ACG Enterprises of
NC, Inc.

Mark A. Haywood, Esq. (P49366)
1274 Library St., Suite 303
Detroit, MI  48226
(313) 967-9322
Co-counsel for Defendant ACG Enterprises
of NC, Inc.

---

**PLAINTIFF PML NORTH AMERICA, LLC'S RESPONSE IN OPPOSITION TO
DEFENDANT RTP INSURANCE'S MOTION TO DISMISS,
OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, MOTION FOR CHANGE OF VENUE**

## TABLE OF CONTENTS

INDEX OF AUTHORITIES…………………………………………………………..iv

INDEX OF EXHIBITS…………………………………………………………..vii

STATEMENT OF THE ISSUES PRESENTED………………………………………viii

CONTROLLING AUTHORITY…………………………………………………….x

INTRODUCTION…………………………………………………………………...1

STATEMENT OF MATERIAL FACTS…………………………………………….2

STANDARD OF REVIEW…………………………………………………………4

ARGUMENT………………………………………………………………….……6

    A. RTP Was Properly Served, And Alternatively, RTP Waived The
       Affirmative Defense Of Insufficiency Of Service Of Process………………….…..6

    B. RTP's Motion To Dismiss For Improper Venue, Or Alternatively,
       To Transfer Venue Should Be Denied…………………………...…………………7

       1.  RTP Has Waived The Affirmative Defense Of Improper Venue……………….7

       2.  Venue Is Proper In This Court When A Substantial Part Of The
          Events Giving Rise To PML's Claims Occurred In The
          Eastern District Of Michigan…………………………………………………..8

       3.  This Court Should Not Disturb PML's Choice Of Forum Pursuant
          To 28 U.S.C. § 1404(a) When RTP Has Failed To Demonstrate
          That The Balance Of Inconveniences Strongly Favors RTP………………….9

    C. Plaintiff Has Sufficiently Met The Amount In Controversy…………………….10

    D. Material Questions Of Fact Remain As To The Creation And
       Delivery Of The Fraudulent Certificates Of Insurance And Coverage
       Letter……………………………………………………………………………12

    E. This Court Has Personal Jurisdiction Over RTP…………………………….14

       1.  RTP Has Waived The Affirmative Defense Of Lack Of Personal
          Jurisdiction……………………………………………………………………14

2. Personal Jurisdiction Exists Pursuant to M.C.L. § 600.715(1) And
   The Due Process Clause.............................................................16

   a.  RTP Has Transacted Business In Michigan......................................16

   b.  Maintenance Of This Action In Michigan Does Not Offend
       "Traditional Notions Of Fair Play And Substantial Justice".....................18

CONCLUSION................................................................................20

# INDEX OF AUTHORITIES

**Cases:**

Allen Cty. for the Env't Inc. v. BP Oil Co., 762 F. Supp. 733 (N.D. Ohio 1991)........................... 6

Amen v. Dearborn, 532 F.2d 554 (6th Cir. 1976)............................................................................ 7

Audi AG v. D'Amato, 341 F. Supp. 2d 734 (E.D. Mich. 2004) ......................................... viii, 4, 10

Audi AG v. Izumi, 204 F. Supp. 2d 1014 (E.D. Mich. 2002)......................................................... 4

Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985)..................................................... ix, 17, 19

Catalano v. Bri, Inc., 724 F. Supp. 1580 (ED Mich. 1989) ............................................................ 9

Cater v. Barker, 617 S.E.2d 113 (N.C. App. 2005) ...................................................................... 12

Celotex Corp. v. Catret, 477 U.S. 317 (1986)................................................................................. 6

Compuserve, Inc. v. Patterson, 89 F.3d 1257 (6th Cir. 1996) ...................................................... 18

General Dynamics Land Sys. v. Crooms, No. 89-CV-72787-TS,
    1990 U.S. Dist. LEXIS 19717 (E.D. Mich. Nov. 19, 1990) ................................................. viii, 7

Hi-Way Motor Co. v. Int'l Harvester Co., 247 N.W.2d 813 (Mich. 1976) ........................... viii, 13

In re Rudolph Iglaricik, Superior Court of New Jersey, Chancery Division,
    Probate Part, Bergen County, Docket No. P-17-05 .................................................................. 11

In re Wolverine Co., 930 F.2d 1132 (6th Cir. 1991) ............................................................... 1, 15

Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945)................................................................. 18, 20

Lanier v. The American Board of Endodontics, 843 F.2d 901 (6th Cir. 1988)................. ix, 17, 19

Lorimer v. Berrelez, 331 F. Supp. 2d 585 (E.D. Mich. 2004) ............................................. viii, 11

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986) ..................................... 6

McGee v. Int'l Life Ins. Co., 355 U.S. 220 (1957)................................................................... ix, 19

Motobecane Am., Ltd. v. Patrick Petroleum Co., 791 F.2d 1248 (6th Cir. 1986)........................ 12

Olden v. LaFarge Corp., 203 F.R.D. 254 (E.D. Mich. 2001) ........................................ 11

Superior v. Walling, 851 F. Supp. 839 (E.D. Mich. 1994) ............................................ 10

Sylvester Material, Inc. v. John Carlo, Inc., No. 3:04CV7686,
    2005 U.S. Dist. LEXIS 9424 (N.D. Ohio, May 17, 2005) ........................................ 8

Theunissen v. Matthews, 935 F.2d 1454 (6th Cir. 1991) ............................................... 4

Third Nat'l Bank v. Wedge Group, Inc., 882 F.2d 1087 (6th Cir. 1989) ...................... 19

United States v. Diebold, Inc., 369 U.S. 654 (1962) ...................................................... 6

Tee-Pak, Inc. v. St. Regis Paper Co., 491 F.2d 1193 (6th Cir. 1974) ........................... 6

**Statutes:**

28 U.S.C. § 1332 ................................................................................................. vii, viii, 11

28 U.S.C. § 1391 ........................................................................................................ vi, 8

28 U.S.C. § 1391(a)(2) .................................................................................................... 8

28 U.S.C. § 1404(a) ............................................................................................... passim

28 U.S.C. § 1406 ............................................................................................................ 4

M.C.L. § 600.705(1) ..................................................................................................... 17

M.C.L. § 600.715 ............................................................................................... 16, 17, 18

M.C.L. § 600.715(2) ..................................................................................................... 16

**Rules:**

Fed. R. Civ. P. 4(e)(1) .............................................................................................. viii, 6

Fed. R. Civ. P. 4(h)(1) .................................................................................................... 6

Fed. R. Civ. P. 12(b)(2) .................................................................................................. 4

Fed. R. Civ. P. 12(b)(3) .................................................................................................. 4

Fed. R. Civ. P. 12(b)(5) ............................................................................................... 5, 6

Fed. R. Civ. P. 12(b)(6) .................................................................................................. 5

Fed. R. Civ. P. 12(h) ............................................................................................................ 7

Fed. R. Civ. P. 56 .................................................................................................................. 5

M.C.R. 2.105(E)(2) ......................................................................................................... viii, 6

**Other Authorities:**

14B Federal Practice & Procedure: Jurisdiction 3d § 3708 (1998) .............................................. 11

### INDEX OF EXHIBITS

Certificates of Insurance for Michigan Companies…………………………………………… A

Certificate of Service on RTP and Certified Mail Receipt………………………………………..B

Order to Show Cause from In re Rudolph Iglaricik……………………………………………C

Transcript Excerpts from Deposition of Carlos Brown…………………………………………..D

Unpublished Cases…………………………………………………………………………..E

## STATEMENT OF THE ISSUES PRESENTED

1.    Whether Plaintiff PML has properly served Defendant RTP via certified mail and whether RTP has waived any objections to service of process by failing to raise this defense in its first responsive pleading?

Plaintiff PML answers:    Yes

Defendant ACG answers:    No


2.a.    Whether venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) when a substantial part of the events giving rise to the PML's claims for breach of contract, fraud, and conversion occurred in the Eastern District of Michigan?

Plaintiff PML answers:    Yes

Defendant RTP answers:    No


2.b.    Whether this Court should alternatively transfer venue pursuant to 28 U.S.C. § 1404(a) when Plaintiff PML, several of its witnesses, and sources of proof are located in the Eastern District of Michigan?

Plaintiff PML answers:    No

Defendant RTP answers:    Yes

3.    Whether Plaintiff PML has met the amount in controversy pursuant to 28 U.S.C. § 1332 when PML has suffered damages in relation to numerous workers compensation claims and premiums paid for workers' compensation coverage that ACG and RTP failed to obtain and provide for PML?

Plaintiff PML answers:    Yes

Defendant RTP answers:    No


4.    Whether Plaintiff PML can overcome RTP's motion for summary judgment when PML has demonstrated material issues of fact as to whether RTP or ACG, or both, fraudulently created the certificates of workers' compensation insurance coverage and breached the promise to obtain and provide PML with the insurance?

Plaintiff PML answers:    Yes

Defendant RTP answers:    No


5.    Whether this Court can exercise personal jurisdiction over RTP pursuant to Michigan's long-arm statute and the due process clause when RTP agreed to obtain and provide PML, a Michigan company, with workers' compensation insurance?

Plaintiff PML answers:    Yes

Defendant ACG answers:    No

## CONTROLLING AUTHORITY

**Issue 1:**

> Fed. R. Civ. P. 4(e)(1)
>
> Fed. R. Civ. P. 12(b) and (h)(1)(B)
>
> M.C.R. 2.105(E)(2)

**Issue 2(a):**

> 28 U.S.C. § 1391
>
> Fed. R. Civ. P. 12(b) and (h)(1)(B)
>
> General Dynamics Land Sys. v. Crooms, No. 89-CV-72787-TS, 1990 U.S. Dist. LEXIS 19717 (E.D. Mich. Nov. 19, 1990)

**Issue 2(b):**

> 28 U.S.C. § 1404(a)
>
> Audi AG v. D'Amato, 341 F. Supp. 2d 734 (E.D. Mich. 2004)
>
> Catalano v. BRI, Inc., 724 F. Supp. 1580 (E.D. Mich. 1989)
>
> Superior v. Walling, 851 F. Supp. 839 (E.D. Mich. 1994)

**Issue 3:**

> 28 U.S.C. § 1332
>
> Olden v. LaFarge Corp., 203 F.R.D. 254 (E.D. Mich. 2001)
>
> Lorimer v. Berrelez, 331 F. Supp. 2d 585 (E.D. Mich. 2004)
>
> Cater v. Barker, 617 S.E.2d 113 (N.C. App. 2005)

**Issue 4:**

> Fed. R. Civ. P. 56
>
> Hi-Way Motor Co. v. Int'l Harvester Co., 247 N.W.2d 813 (Mich. 1976).

Motobecane Am., Ltd. v. Patrick Petroleum Co., 791 F.2d 1248 (6th Cir. 1986).

**Issue 5:**

M.C.L. § 600.715(1)

Asmar v. Benchmark Literacy Group, Inc., No. 04-70711, 2005 U.S. Dist. LEXIS 23197 (E.D. Mich., Oct. 11, 2005)

Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985)

Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945)

Lanier v. The American Board of Endodontics, 843 F.2d 901 (6th Cir. 1988)

McGee v. Int'l Life Ins. Co., 355 U.S. 220 (1957)

Superior Consulting Co., Inc. v. Walling, 851 F. Supp. 839 (E.D. Mich. 1994)

In re Wolverine Co., 930 F.2d 1132 (6th Cir. 1991)

## INTRODUCTION

Defendant RTP Insurance of Durham, NC's ("RTP") untimely Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, or in the Alternative, Motion for Transfer of Venue should be denied. First, RTP failed to raise the affirmative defenses of improper venue and insufficient service of process in its first responsive pleading. Second, through its active participation in this case for seven months prior to filing its Motion, RTP also waived its objections to personal jurisdiction, as well as improper venue and insufficient service of process.

Third, even if RTP has not waived these defenses, RTP's Motion substantively fails for the following reasons:

(1)     Plaintiff PML North America, LLC ("PML") properly served RTP via certified mail.

(2)     Venue is proper in this Court because a substantial part of the events giving rise to PML's claims occurred in the Eastern District of Michigan. RTP also failed to demonstrate that the balance of inconveniences strongly favors transferring venue.

(3)     PML has met the $75,000.00 amount in controversy because it has suffered, and continues to suffer, damages relating to numerous workers' compensation claims and premiums paid for workers' compensation insurance that RTP and ACG failed to obtain for PML.

(4)     PML has sufficiently demonstrated genuine issues of material fact as to whether RTP or ACG, or both, fraudulently creation the certificates of insurance and breached the promise to provide workers' compensation insurance.

(5)     This Court may exercise personal jurisdiction over RTP pursuant to M.C.L. § 600.715(1) and the due process clause where, as here, RTP transacted business within Michigan by agreeing to obtain and provide workers' compensation insurance to PML, a Michigan company.

Therefore, because RTP's Motion to Dismiss is untimely and fails on the merits, this Court should deny RTP's Motion.

## STATEMENT OF MATERIAL FACTS

PML is a Michigan limited liability corporation with its principal place of business located in Shelby Township, Michigan. (First Amended Complaint at ¶1.) PML is the majority owner of numerous professional employer organizations ("PEOs"). (Id. at ¶7.) PML sought to obtain workers' compensation insurance for its PEOs and the customers of those PEOs. PML was referred to ACG, a North Carolina corporation, to obtain the necessary insurance for employees located in Michigan and other states.[1] (Id. at ¶9.) ACG assured PML that it could obtain the workers' compensation insurance PML needed. (Id. at ¶10.) Based on these assurances, PML entered into the Contract with ACG on November 17, 2004, whereby ACG agreed to obtain and provide workers' compensation insurance to PML. (See Ex. A to Compl.) ACG then contracted with its insurance broker/agent, RTP, to obtain and provide the necessary workers compensation insurance.

PML received from ACG numerous certificates of insurance that demonstrated that had obtained workers' compensation insurance coverage for PML through the insurance broker, RTP, and insurer, Hartford Underwriters Insurance Company ("Hartford"). (See Ex. B to the Compl.) On December 8, 2004, PML's coverage was further confirmed in a letter from an account manager underwriter at Hartford that PML received from ACG (the "coverage letter"). (Ex. C to the Compl.) ACG claimed that it received the certificates of insurance and coverage letter from RTP. PML paid in excess of $38,000.00 in premiums to ACG for the Hartford

---

[1] The customers of PML's various PEOs are located in many states. With respect to Michigan, PML's Contract with ACG would provide workers' compensation for PML North America, LLC and the following customers with employees in Michigan: Cooper Construction, Inc., Brines Refrigeration, Inc., Long Term Care Resources, TFG Installation Services, Inc., Metro Electrical Engineering Technologies, and Facilitec. Indeed, ACG and/or RTP sent PML certificates of insurance for several of these companies. (See **Exhibit A** attached hereto.)

2

Policy. (Compl. at ¶18.) During this time, an employee, Rudolph Iglarcik, of one of the PEO's

customers suffered a closed injury, and submitted a workers' compensation claim. His medical

bills and claim is well in excess of $1,000,000.00. When PML submitted this claim, in addition

to other numerous claims, to Hartford, those claims were denied.

On February 2, 2005, PML filed a Complaint only against Hartford in this Court because

Hartford regularly conducted business in Michigan. Hartford's counsel then advised PML that

the certificates of workers' compensation insurance and coverage letter that ACG provided to

PML were fraudulent. This was the first time that PML learned that the documents from

Hartford could be invalid. PML subsequently amended its Complaint to add ACG and RTP as

Defendants. Since the addition of RTP as a Defendant in May of 2005, RTP has actively

participated in this case and unreasonably waited for seven months before filing this Motion to

Dismiss and/or Transfer Venue:

- On June 16, 2005, RTP answered the First Amended Complaint without raising the defenses of improper venue or insufficiency of service of process.
- On August 1, 2005, RTP moved the Court to allow John E. Gilchrist to represent RTP in pro per.
- On August 4, 2005, RTP filed what it entitled as an "Amended Answer and Motion for Summary Judgment.
- On August 8, 2005, RTP participated in the status conference with this Court and the parties.
- On September 22, 2005, RTP participated in the deposition of Michelle Hutchins.
- On October 5, 2005, RTP participated in the deposition of Charles Thomke.
- On October 7, 2005, RTP filed its Responses to PML's First Set of Discovery Requests.
- On October 6 and 7, 2005, John E. Gilchrist and Lauren Gilchrist's depositions were taken.
- On October 19, 2005, RTP participated in a telephone status conference with this Court and the parties.
- On December 7, 2005, RTP against participated in a telephone status conference.

**STANDARD OF REVIEW**

A.    **Federal Rule of Civil Procedure 12(b)(2).**

When a defendant challenges personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing the existence of personal jurisdiction. See Audi AG v. Izumi, 204 F. Supp. 2d 1014, 1016-17 (E.D. Mich. 2002) (citations omitted). The plaintiff, however, must only make a prima facie showing of personal jurisdiction over the defendant because "the Court is not conducting an evidentiary hearing on the matter of personal jurisdiction." Id. at 1017. The Court views the evidence in the light most favorable to PML, and it should not consider facts proffered by ACG that conflict with those offered by PML. Id. (citing Theunissen v. Matthews, 935 F.2d 1454, 1459 (6th Cir. 1991)).

B.    **Federal Rule of Civil Procedure 12(b)(3).**

On a motion to dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3), the plaintiff bears the burden of proving that venue is proper.  Id.  The Court may examine facts outside the Complaint; however, the Court must draw all reasonable inferences and resolve factual conflicts in favor of PML.  Id. (citations omitted).  If RTP prevails on a Rule 12(b)(3) challenge, the Court has the discretion to decide whether the action should be dismissed or transferred. See 28 U.S.C. § 1406(a).

C.    **Transfer of Venue Pursuant  28 U.S.C. § 1404(a).**

In the alternative to a dismissal, RTP seeks a transfer of the case pursuant to 28 U.S.C. § 1404(a).  The court has wide discretion to transfer an action in order to "prevent waste of time, energy and money, and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Audi AG v. D'Amato, 341 F. Supp. 2d 734, 749 (E.D. Mich. 2004)

4

(citations omitted).  In rendering a decision pursuant to 28 U.S.C. § 1404(a), the Court must determine whether: "(1) the action could have been brought in the proposed transferee-court; (2) a transfer would promote the interests of justice; and (3) a transfer would serve the parties' and the witnesses' convenience."  Id.  A defendant bears the burden of demonstrating that "fairness and practicality strongly favor the forum to which transfer is sought," and it must make this showing by a preponderance of the evidence.  Id. (citations omitted).

**D.     Federal Rule of Civil Procedure 12(b)(5).**

With respect to a motion to dismiss for insufficient service of process, the Court examines whether the plaintiff comported with Federal Rule of Civil Procedure 4 and Michigan Court Rule 2.105.

**E.     Federal Rule of Civil Procedure 56**

RTP's Motion to Dismiss pursuant to Rule 12(b)(6) should be treated as one for summary judgment pursuant to Rule 56.  Rule of Civil Procedure 12(b)(6) requires that a motion be treated as one for summary judgment when the movant relies on matters outside of the pleadings:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

RTP has relied on documents and evidence, as demonstrated by the exhibits attached to its Motion, that are outside of the pleadings.  Therefore, the standard of review for a Rule 56 motion should apply.

Summary judgment is not appropriate when, as here, there is a genuine issue of material fact.  See Fed. R. Civ. P. 56(c).  When ruling on a motion filed under Rule 56(c), the Court's

function is to determine if any genuine issue exists, not to resolve any factual issues, and to deny summary judgment if such an issue exists.  United States v. Diebold, Inc., 369 U.S. 654 (1962); Tee-Pak, Inc. v. St. Regis Paper Co., 491 F.2d 1193 (6th Cir. 1974).  The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case.  Celotex Corp. v. Catret, 477 U.S. 317 (1986).  All facts and inferences must be viewed in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The opposing party "need only present evidence from which a jury might return a verdict in his favor."  Allen Cty. for the Env't Inc. v. BP Oil Co., 762 F. Supp. 733, 739 (N.D. Ohio 1991).

## ARGUMENT

**A.    RTP Was Properly Served, And Alternatively, RTP Waived The Affirmative Defense Of Insufficiency Of Service Of Process.**

PML properly served RTP with the Complaint.  In RTP's Motion, John E. Gilchrist, the sole proprietor of RTP, admitted that he does business as RTP Insurance and Financial Associates.  (See RTP's Motion, pp. 1, 5.)  Pursuant to Federal Rule of Civil Procedure 4(h)(1), an "unincorporated association that is subject to suit under a common name" may be served in the manner prescribed by law of the State of Michigan.  See also Fed. R. Civ. P. 4(e)(1). Michigan allows service on an unincorporated association via "sending a summons and copy of the complaint by registered mail, addressed to an office of the association."  M.C.R. 2.105(E)(2). Accordingly, the summons and complaint were properly served via certified mail on RTP's office.  (See **Exhibit B**, Certificate of Service and Certified Mail Receipt.)

Furthermore, RTP waived the ability to request dismissal based upon insufficiency of process pursuant to Federal Rule of Civil Procedure 12(b)(5).  First, RTP waived the affirmative

6

defense of insufficiency of process by failing to raise the defense in its first responsive pleading. Fed. R. Civ. P. 12(h). Rule 12(b) states that a motion making the defense of insufficient service of process "shall be made before pleading if a further pleading is permitted." Rule 12(h)(1)(B) further provides that the defense is waived if "it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course." See also Amen v. Dearborn, 532 F.2d 554, 557 n. 7 (6th Cir. 1976). Second, RTP's active participation in this case for seven months prior to the filing of its Motion constitutes waiver. Therefore, RTP's Motion to Dismiss based on the insufficiency of process should be denied.

**B.    RTP's Motion To Dismiss For Improper Venue, Or Alternatively, To Transfer Venue Should Be Denied.**

**1.    RTP Has Waived The Affirmative Defense Of Improper Venue.**

In addition to failing to raise the affirmative defense of insufficiency of service of process in its first responsive pleading, RTP also failed to raise improper venue. Therefore, RTP has waived this defense pursuant to Rule 12(b) and (h)(1)(B), and this Court should deny RTP's Motion to dismiss or transfer venue. See General Dynamics Land Sys. v. Crooms, No. 89-CV-72787-TS, 1990 U.S. Dist. LEXIS 19717, **9-10 (E.D. Mich. Nov. 19, 1990) (denying the defendant's motion to dismiss and motion to transfer venue because the defendant failed to raise improper venue in its answer or a pre-answer motion and, thus, waived the defense).

RTP has also waived the affirmative defense of improper venue by actively participating in this case. During the last seven months that RTP litigated this case, RTP never filed a motion to dismiss based on improper venue. RTP's failure to file its Motion before actively defending this case on the merits, as well as its failure to include the defense in its first responsive pleading,

7

constitutes a waiver of its venue objections.[2]  Therefore, this Court should therefore deny RTP's

Motion to dismiss or transfer venue.

    **2.**    **Venue Is Proper In This Court When A Substantial Part Of The Events Giving Rise To PML's Claims Occurred In The Eastern District Of Michigan.**

        RTP confuses the distinction between a motion to transfer venue with a motion to dismiss

based upon improper venue.  Forum selection clauses do not dictate the forum in relation to

reviewing a <u>motion to dismiss</u> for improper venue.[3]  More importantly, RTP solely and

improperly relies on the existence of a forum selection clause in the PML/ACG contract to

support its motion to dismiss and/or transfer venue despite the fact that it is not a signatory to the

contract.

        Venue is proper in Michigan when a substantial part of the events giving rise to PML's

claims of fraud, breach of contract, and conversion occurred in the Eastern District of Michigan.

The venue statute, 28 U.S.C. § 1391, states:

> (a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) **a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred,** or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to

---

[2]  As discussed more fully in this Brief, in Section (F)(1), Michigan federal courts concluded that a defendant may waive its affirmative defenses of insufficient service of process, lack of personal jurisdiction, and improper venue by actively participating in a case.

[3]  RTP cannot rely on the forum selection clause in the PML/ACG contract.  Nonetheless, it is well established that the existence of a forum selection clause has <u>no effect</u> on whether venue in this Court is proper.  The Sixth Circuit in <u>Kerobo v. Southwestern Clean Fuels, Corp.</u>, 285 F.3d 531, 536 (6th Cir. 2002), stated that "the Supreme Court made it clear in <u>Ricoh</u> that **forum selection clauses do not dictate the forum**. . . .  We think this is a clear signal that if venue is proper under the statute [28 U.S.C. § 1391], a motion to transfer for improper venue will not lie." <u>Id.</u> at 536 (emphasis added) (discussing <u>Stewart Org., Inc. v. Ricoh Corp.</u>, 487 U.S. 22 (1988)).

personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought. [Emphasis added.]

PML is located in Shelby Township, Michigan. PML's obligations and duties under the contract with ACG were to be carried out in Michigan – PML benefited from the services and insurance in Michigan and ACG issued invoices to PML in Michigan. The subject certificates of insurance and coverage letter defrauded a Michigan company, and as a result, PML continues to suffer harm and incurs damages in Michigan. Lastly, PML's various claims against ACG and RTP, as the insurance agent/broker of ACG, are based on ACG and RTP's failure to provide workers' compensation insurance to PML, a Michigan company. Therefore, venue is proper in the Eastern District of Michigan where a substantial part of the events giving rise to PML's claims of breach of contract, fraud, and conversion occurred in this forum.

3.    **This Court Should Not Disturb PML's Choice Of Forum Pursuant To 28 U.S.C. § 1404(a) When RTP Has Failed To Demonstrate That The Balance Of Inconveniences Strongly Favors RTP.**

The interests of justice do not warrant transfer of this case under 28 U.S.C. § 1404(a) from the Eastern District to a federal district court in North Carolina. Not only has RTP waived the ability to request a transfer of venue, but RTP also failed to overcome the presumption in favor of PML's choice of forum.

A case can be transferred to another federal district court with jurisdiction: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district of division where it might have been brought." 28 U.S.C. § 1404(a). **A plaintiff's choice of forum will not be disturbed unless the "balance of inconveniences is strongly in favor of the defendants."** See, e.g., Catalano v. BRI, Inc., 724 F. Supp. 1580, 1583 (E.D. Mich. 1989) (emphasis added). In rendering a decision pursuant to 28

U.S.C. § 1404(a), the Court must determine whether: "(1) the action could have been brought in the proposed transferee-court; (2) a transfer would promote the interests of justice; and (3) a transfer would serve the parties' and the witnesses' convenience." D'Amato, 341 F. Supp. 2d at 749. Additional factors to review include:

> (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of processes to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems associated with trying the case most expeditiously and inexpensively; and (7) the interest of justice.

Id. Exchanging the inconveniences of one party in favor of the other is insufficient to warrant a transfer of venue. Superior v. Walling, 851 F. Supp. 839, 845 (E.D. Mich. 1994) ("[T]ransferring venue to Texas **would simply have exchanged the inconvenience of one party for that of the other**, despite Walling's assertion that he would be more greatly inconvenienced by trial here than SCC would be by trial in Texas." (Emphasis added).)

Likewise, the balance of inconveniences in the instant case does not tilt in the RTP's favor. PML, as well as some of the witnesses, documentary evidence, and sources of proof, are located in the Eastern District of Michigan. Transferring the case to North Carolina only serves as a convenience to the Defendants – no other factors weigh in the RTP's favor. Furthermore, RTP cannot rely on a forum selection clause in a contract to which it is not a signatory. Therefore, the interests of justice require that the Plaintiffs' choice of the Eastern District of Michigan remains undisturbed.

## C.     Plaintiff Has Sufficiently Met The Amount In Controversy.

Subject matter jurisdiction based on diversity of citizenship requires an amount in controversy in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees. 28 U.S.C. §

1332. If the amount in controversy is challenged by the defendant, the complaint will only be dismissed if "it appears to a legal certainty that the plaintiff in good faith cannot claim the jurisdictional amount." Olden v. LaFarge Corp., 203 F.R.D. 254, 259 (E.D. Mich. 2001) (citations omitted). If injunctive relief is requested, the amount in controversy is measured by the object of the litigation. Id. at 260. See also Lorimer v. Berrelez, 331 F. Supp. 2d 585, 591 (E.D. Mich. 2004) ("The amount in controversy in such injunctive relief claims is measured by 'the value of the object that is the subject matter of the action.'" (quoting Charles A. Wright, Arthur R. Miller & Edward R. Cooper, 14B Federal Practice & Procedure: Jurisdiction 3d § 3708 (1998).)

In the instant case, PML has brought claims against the Defendants because it contracted for and was promised workers' compensation coverage for its PEOs and all of their clients. ACG and RTP, however, failed to obtain the necessary coverage. Therefore, any workers' compensation claims that should have been covered by the insurance policy that ACG obtained through RTP constitute damages. Numerous claims have been made, and Hartford Insurance has denied those claims. (See Compl. at ¶¶14-16.) For example, just one of those claims is well in excess of $1,000,000.00: Rudolph Iglarcik, an employee of one of the customers of PML's PEOs, suffered a closed head injury and is currently incapacitated.[4] Mr. Iglarcik's workers' compensation claim alone far exceeds the amount in controversy and continues to grow.

Moreover, PML paid in excess of $38,000.00 in premiums to ACG and RTP. (Id. at ¶ 18.) PML also seeks injunctive relief in terms of the Defendants providing workers'

---

[4] A lawsuit was filed by Mr. Iglaricik's guardian in the Superior Court of New Jersey, In re Rudolph Iglaricik, Superior Court of New Jersey, Chancery Division, Probate Part, Bergen County, Docket No. P-17-05, regarding the workers' compensation coverage. (See **Exhibit C**, Order to Show Cause.)

compensation coverage for PML's PEOs and their customers.  The value of this coverage for

workers' compensation claims also meets the statutory amount in controversy.

Lastly, RTP relies on the existence of a clause in the PML/ACG contract that discusses a

$1,000,000.00 deductible.  Because of the first material breach of the contract by ACG and the

fraud committed by ACG and RTP, PML disputes ACG's ability to enforce this provision.  See,

e.g., Cater v. Barker, 617 S.E.2d 113, 116 (N.C. App. 2005) ("[A] party asserting breach of

contract must have first performed his promise or offered to do so in order to preserve his rights

under the contract.")  Regardless of this disputed provision, PML has sufficiently demonstrated

that it has met the $75,000.00 amount in controversy through its request for workers'

compensation coverage and its request for damages pertaining to workers' compensation claims

that have been submitted (and continue to grow), such as Mr. Iglarcik's claim, and the amount of

premiums paid by PML.

**D.**     **Material Questions Of Fact Remain As To The Creation And Delivery Of The Fraudulent Certificates Of Insurance And Coverage Letter.**

PML has sufficiently set forth claims against RTP for unjust enrichment, promissory

estoppel, fraud and misrepresentation, and conspiracy.[5]  Even after the first phase of limited

---

[5] Under Michigan law, the elements of promissory estoppel are:

(1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, (3) which in fact produced reliance or forbearance of that nature, (4) in circumstances such that the promise must be enforced if injustice is to be avoided.

Motobecane Am., Ltd. v. Patrick Petroleum Co., 791 F.2d 1248, 1251 (6th Cir. 1986).  Courts have required the following elements for a claim for fraud:

(1) that defendant made a material misrepresentation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any

discovery, RTP and ACG continue to point the finger at each other as to the creation and delivery of the fraudulent certificates of insurance and coverage letter which purported to provide workers compensation insurance coverage for ACG and PML, with RTP as the insurance broker. Thus, a material question of fact remains.

This case presents the classic example of the existence of a material question of fact. Indeed, despite RTP's claims, Carlos Brown, President of Defendant ACG, testified at his deposition that he received the fraudulent certificates of insurance from RTP. (**Exhibit D,** Brown Dep. Tr., pp. 49-50.) Even Mr. Gilchrist's questioning of Mr. Brown at the deposition demonstrated that there is a dispute between RTP and ACG as to the creation of the fraudulent certificates of insurance -- each still maintains that the other created and sent these documents. For instance, Mr. Gilchrist asked Mr. Brown:

> Q.   Okay.   We have a -- we have a number of documents that you've acknowledged that I sent to you via internet email. Okay? I've noticed that none of those documents have Bates numbering on them.
>
> * * *
>
> Q.   You mentioned that you asked for hard copies of certificates in the exhibits -- in Exhibits 9 and 10?
>
> A.   I asked for emails, fax, and on occasions I would be in your office and you would hand me certificates as well.

---

knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist.

Hi-Way Motor Co. v. Int'l Harvester Co., 247 N.W.2d 813 (Mich. 1976).

(Id. at 193, 196.)  In fact, in a recent status conference with this Court, RTP requested that the Court issue subpoenas on its behalf so it could retrieve information off of ACG's computers and ACG's phone records.  Accordingly, RTP has acknowledged that a question of fact remains as to the creation of the fraudulent certificates.

Moreover, Mr. Brown of ACG testified that RTP was its agent for purposes of obtaining workers' compensation insurance.  (Id. at 195.)  Mr. Brown further testified that he explained to RTP that he needed workers' compensation insurance coverage for employees outside of North Carolina and that RTP promised that the employees would be covered under the policy. (Id. at 59.)

Questions of fact clearly remain as to which defendant, if not both, is responsible for the creation of the fraudulent certificates of insurance.  Moreover, there is evidence that RTP promised to obtain workers' compensation insurance for ACG, which would in turn provide coverage for PML, and that PML paid premiums for this insurance to ACG and RTP.  Therefore, RTP's motion for summary judgment on PML's claims of unjust enrichment, promissory estoppel, fraud and misrepresentation, and conspiracy should be denied because of the existence of material questions of fact.

**E.**    **This Court Has Personal Jurisdiction Over RTP.**

**1.**    **RTP Has Waived The Affirmative Defense Of Lack Of Personal Jurisdiction.**

RTP has waived its objections to personal jurisdiction through its active participation in this case during seven months prior to filing its Motion.  A party may preserve its objections to personal jurisdiction and venue as affirmative defenses; however, federal courts have held that a party may waive the defenses by implication through actively participating in a case.  For

14

instance, the Sixth Circuit Court of Appeals held that the defendant, Michigan Employment Security Commission, waived any defects in personal jurisdiction because jurisdiction was "acquired due to its appearance and participation in the litigation." In re Wolverine Co., 930 F.2d 1132, 1138 n.5 (6th Cir. 1991).

Furthermore, in a recent unpublished decision from this Court, Asmar v. Benchmark Literacy Group, Inc., No. 04-70711, 2005 U.S. Dist. LEXIS 23197 (E.D. Mich., Oct. 11, 2005),[6] the Honorable Nancy G. Edmunds held that the defendants waived their personal jurisdiction arguments. The court in Asmar found waiver **on two independent bases: (1)** through the defendants' conduct **and (2)** the defendants' failure to assert lack of personal jurisdiction as an affirmative defense in their first pleadings. Id. at *18. The Court stated that the defendants:

> litigated several non-dispositive motions, actively participated in status conferences, and tendered discovery on matters other than jurisdiction. n12. By their conduct, Defendants Benchmark and Hanson have waived any personal jurisdiction objections that they may have had.
>
> * * *
>
> n12 Benchmark and Hanson state that 'all parties sat down with the Court early on in this proceeding and agreed upon a course of action which would defer motions and discovery . . . . [sic]' (Doc. 89, 2.) The Court never implied that Benchmark and Hanson need not raise their personal jurisdiction arguments. Nor did the Court understand that to be the agreed 'course of action.'

Id. at **18, 19 n.12 (citations omitted).

The rationale of Asmar applies here too. There was no court order or agreement of the parties preventing RTP from filing a motion challenging personal jurisdiction and venue. Instead of doing so:

---

6  All unpublished cases are attached as **Exhibit E** hereto.

- On June 16, 2005, RTP answered the First Amended Complaint without raising the defenses of improper venue or insufficiency of service of process.
- On August 1, 2005, RTP moved the Court to allow John E. Gilchrist to represent RTP in pro per.
- On August 4, 2005, RTP filed what it entitled as an "Amended Answer and Motion for Summary Judgment.
- On August 8, 2005, RTP participated in the status conference with this Court and the parties.
- On September 22, 2005, RTP participated in the deposition of Michelle Hutchins.
- On October 5, 2005, RTP participated in the deposition of Charles Thomke.
- On October 7, 2005, RTP filed its Responses to PML's First Set of Discovery Requests.
- On October 6 and 7, 2005, John E. Gilchrist and Lauren Gilchrist's depositions were taken.
- On October 19, 2005, RTP participated in a telephone status conference with this Court and the parties.
- On December 7, 2005, RTP against participated in a telephone status conference.

RTP's active participation in this case for seven months constitutes a waiver of the affirmative defense of lack of personal jurisdiction.

### 2.    Personal Jurisdiction Exists Pursuant To M.C.L. § 600.715(1) And The Due Process Clause.

Furthermore, this Court has personal jurisdiction over RTP pursuant to Michigan's long-arm statute and the Due Process Clause of the Fourteenth Amendment by virtue of RTP's transaction of business, as ACG's insurance broker/agent, in Michigan with PML. In order for this Court to exercise personal jurisdiction over RTP, the first inquiry is whether Michigan's long-arm statute grants jurisdiction. The second inquiry is whether the exercise of that jurisdiction comports with "traditional notions of fair play and substantial justice."

### a.  RTP Has Transacted Business In Michigan.

First, RTP is subject to jurisdiction under Michigan's long-arm statute, M.C.L. § 600.715. Specifically, M.C.L. § 600.715(1) states that "the transaction of any business within the state" constitutes a sufficient basis for a Michigan court to exercise jurisdiction.

This Court has interpreted the word "any" to mean "'each' and 'every,' . . . . It comprehends 'the slightest.'" <u>Walling</u>, 851 F. Supp. at 844. With respect to entire phrase "transaction of any business" and the first prong of the jurisdictional analysis, the Sixth Circuit, in <u>Lanier v. The American Board of Endodontics</u>, 843 F.2d 901, 906 (6th Cir. 1988), held that "if the defendant conducted even the slightest act of business in Michigan, the first statutory criterion for personal jurisdiction under section 600.715(1) is satisfied." The <u>Lanier</u> court found that the defendant board, which resided in Illinois, had contacts with Michigan through its correspondence; its certification of the plaintiff doctor, who practiced in Michigan, once she passed the certification exam; and the payment of fees by the Michigan doctor to the Illinois board. <u>Id.</u> The court further concluded that:

> . . . **Neither the presence of the defendant in the state, nor actual contract formative need to take place in the forum state for defendant to do business in that state.** In <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 85 L. Ed. 2d 528, 105, S. Ct. 2174 (1985), the court held:
>
> **Jurisdiction . . . may not be avoided merely because the defendant did not physically enter the forum State.** Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an *inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines,* thus obviating the need for physical presence within a State in which business is conducted. *So long as a commercial actor's efforts are purposefully directed" toward residents of another State* [physical absence is not dispositive]. <u>Id.</u> at 476.

<u>Id.</u> at 907 (bold-faced emphasis added; italicization in original).

RTP, similar to ACG, is subject to limited personal jurisdiction pursuant to M.C.L. § 600.715(1) when it transacted <u>any</u> business within Michigan. RTP agreed to obtain and provide PML, a Michigan company, with workers' compensation insurance as ACG's insurance broker/agent. Specifically, RTP entered into a contractual relationship with ACG to obtain and

provide PML's PEOs and the customers of the PEOs in various states including Michigan with the workers' compensation insurance. RTP thus agreed to provide services and insurance to PML in Michigan to cover PML, PML's affiliated PEOs, and the customers of those PEOs, some of whom were located in Michigan. (See **Exhibit A**.) This conduct sufficiently constitutes the transaction of "any business" within this State. The fact that RTP now disputes agreeing to obtain the insurance coverage does not establish lack of personal jurisdiction, especially when testimony from Mr. Brown of ACG directly contradicts Mr. Gilchrist's current position.

The second prong under M.C.L. § 600.715, that the cause of action arose out of the business that RTP transacted within the state, is satisfied. PML's claims of breach of contract, conversion, and fraud all arise out of RTP's relationship with PML to provide PML, as a Michigan company, with workers' compensation insurance for its PEOs. Indeed, PML paid RTP and ACG for this insurance coverage.

### b. Maintenance Of This Action In Michigan Does Not Offend "Traditional Notions Of Fair Play And Substantial Justice."

The next step is to determine whether the Due Process Clause permits the exercise of limited personal jurisdiction under Michigan's long-arm statute. A defendant must have "certain minimum contacts with [the forum] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

Personal jurisdiction may be established by showing either "general" or "specific" jurisdiction depending on the nature of the contacts. Compuserve, Inc. v. Patterson, 89 F.3d 1257, 1263 (6th Cir. 1996). General jurisdiction may be established by "continuous and systematic" contacts with the forum state even if the action is unrelated to the defendant's

contacts; whereas specific jurisdiction may be established when a defendant's contacts with the

forum are related to the action.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73 (1985);

Third Nat'l Bank v. Wedge Group, Inc., 882 F.2d 1087, 1089 (6th Cir. 1989).

In order to exercise specific jurisdiction, the Sixth Circuit requires that the cause of action

arose from the defendant's activities in the forum and that:

(1)    defendants purposefully availed themselves of the privilege of
conducting activities in Michigan; and

(2)    the acts of the defendants or **consequences caused by the defendant
must have had a substantial enough connection with the forum** to
make the exercise of jurisdiction over the defendant reasonable.

Lanier, 843 F.2d at 909 (emphasis added).

The Sixth Circuit in Lanier, supra, interpreted the phrase "purposefully availed itself" to

mean "where the defendant 'deliberately' has engaged in *significant activities* within a State . . .

*or* has created '*continuing obligations*,' between himself and residents of the forum." Id. at 910

(emphasis in original) (quoting Burger King, 471 U.S. at 475-76).  See also McGee v. Int'l Life

Ins. Co., 355 U.S. 220 (1957) (permitting the exercise of personal jurisdiction of the California

courts over a Texas insurance company solely because the Texas company offered insurance to

one individual in the forum and collected premiums from that individual).

In the instant case, RTP purposefully availed itself of the privilege of conducting

activities in Michigan when it agreed to obtain and provide workers' compensation insurance for

a Michigan company, its PEOs, and the customers of those PEOs, several of whom are located in

Michigan. RTP's creation of continuing obligations with PML subjects it to jurisdiction.  As

stated above in the Lanier and Burger King cases, "Parties who 'reach out beyond one state and

create continuing relationships and obligations with citizens of another state' are subject to

regulation and sanctions in the other State for the consequences of their activities." Burger King, 471 U.S. at 473.

PML's claims against RTP for unjust enrichment, promissory estoppel, fraud and misrepresentation, and conspiracy arose out of RTP's contact with Michigan, and PML continues to suffer the consequences of RTP's conduct in Michigan. Therefore, the exercise of limited personal jurisdiction under Michigan's long-arm statute in this case comports with "traditional notions of fair play and substantial justice." Int'l Shoe, 326 U.S. at 316 (1945).

## CONCLUSION

For the foregoing reasons, Plaintiff PML North America, LLC respectfully requests that this Court deny Defendant ACG Enterprises of NC, Inc.'s Motion to Dismiss.

Respectfully submitted,

BUTZEL LONG

/s/ Michael G. Latiff
Michael G. Latiff (P51263)
Maureen T. Taylor (P63547)
Katherine Donohue Goudie (P62806)
150 West Jefferson, Suite 100
Detroit, MI 48226-4450
(313) 225-7000
E-mail: latiff@butzel.com
        taylorm@butzel.com
        goudie@butzel.com
Attorneys for Plaintiff

Dated:  December 28, 2005

/808576/

20

## CERTIFICATE OF SERVICE

I further certify that on December 29, 2005, I caused a copy of the foregoing paper and all attachments thereto to be served on each of the following via first class U.S. Mail:

| | |
|---|---|
| Keith Bishop, Esq. (N.C. Bar No. 18918)<br>Madison Center, Suite 105<br>1802 Martin Luther king, Jr. Parkway<br>Durham, North Carolina  27707 | |
| John Edward Gilchrist, pro se<br>3325 Chapel Hill Blvd., Suite 145<br>Durham, NC  27707 | Mark A. Haywood, Esq. (P49366)<br>1274 Library St., Suite 303<br>Detroit, MI  48226 |

by placing same in a sealed envelope, addressed to said attorney and depositing same in the United States mail in Detroit, Michigan, with postage fully prepaid.

I declare that the foregoing is true and accurate to the best of my information, knowledge and belief.

BUTZEL LONG

By: /s/ Katherine D. Goudie
      James J. Giszczak (P46917)
      Michael G. Latiff (P51263)
      Katherine D. Goudie (P62806)
150 West Jefferson, Suite 100
Detroit, MI  48226-4450
(313) 225-7000
E-mail:  giszczak@butzel.com
       latiff@butzel.com
Attorneys for Plaintiff

Dated:  December 29, 2005

/766396/