**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

PML NORTH AMERICA, LLC,

        Plaintiff,

v.                                                      Case No. 05-CV-70404-DT

ACG ENTERPRISES OF NC, INC.
and RTP INSURANCE OF DURHAM, NC,

        Defendants.

_____/

**ORDER DENYING DEFENDANT ACG'S MOTION TO DISMISS AND DENYING**
**DEFENDANT RTP INSURANCE'S MOTION TO DISMISS**

        Pending before the court is a motion to dismiss filed by Defendant ACG

Enterprises of NC, Inc. ("ACG") and a "Motion to Dismiss, or in the Alternative, Motion

for Summary Judgment, or in the Alternative, Motion for Change of Venue" filed by RTP

Insurance of Durham, NC ("RTP").  The court has reviewed the briefs and determines

that a hearing on the motions is unnecessary.  *See* E.D. Mich. LR 7.1(e)(2).  For the

reasons stated below the court will deny the motions.

**I.  BACKGROUND**

        Plaintiff PML North America, LLC ("PML") is the majority owner of numerous

professional employer organizations ("PEOs").  (Am. Comp. at ¶ 7.)  According to the

Amended Complaint, PML sought to obtain worker's compensation insurance for the

PEOs, as well as their customers.  (*Id.* at ¶ 8.)  PML contracted with ACG to obtain the

worker's compensation insurance.  (*Id.* at ¶ 11.)  Plaintiff further alleges that ACG used

its insurance broker RTP to obtain the insurance on behalf of PML from Hartford

Underwriters Insurance ("Hartford") . (*Id.* at ¶ 12.)  Hartford, however, subsequently denied that ACG and RTP obtained worker's compensation insurance from it, and has refused to provide any coverage to PML or its PEOs.  (*Id.* at ¶¶ 14-17.)

PML initiated this action on February 2, 2005 against Hartford alleging subject matter jurisdiction on the basis of diversity of citizenship.  An amended complaint was filed on May 10, 2005, adding RTP and ACG as defendants.  Plaintiff's amended complaint asserts eight counts, including claims of breach of contract, fraud, conspiracy to convert, and conversion.  ACG filed its answer on June 6, 2005, in which it affirmatively asserted the complaint should be dismissed for lack of subject matter jurisdiction, lack of personal jurisdiction, and improper venue.  (ACG's "Pre-Answer Motions" at ¶¶ 2-4.)  RTP filed its *pro se* answer on June 17, 2005.  Although RTP's answer does not assert any affirmative defense, it does contain argument which, construed liberally, attacks the existence of personal jurisdiction over RTP and asserts that the Eastern District of Michigan is not the proper venue for this action.  (RTP's Ans. at Resp. # 6.)

On June 10, 2005, Hartford filed a motion to dismiss, arguing that the documents upon which PML based its action were fraudulent.  PML responded with a motion to conduct discovery, and RTP filed a motion for summary judgment.  On August 10, 2005, the court conducted a status conference during which the court suggested and the parties agreed that the most efficient way to proceed would be to allow limited discovery targeted on the assertions regarding the allegedly fraudulent documents.  (*See* 8/11/05 Order at 1-2.)  The court thus denied without prejudice the motion to dismiss and motion for summary judgment as premature and granted the motion for discovery.  (*Id.* at 2.)

2

Discovery was to conclude by October 10, 2005. (*Id.*) During the conference, ACG specifically declared to the court its intention to file a motion challenging the court's venue, but the court indicated that any such motion should be filed after the conclusion of discovery on the fraudulent documents. (*See id.* at 3.) From the court's recollection, this was because all the parties seemed to agree that discovery could lead to potential dismissal of one or all of the parties, and the potential narrowing of claims. Indeed, after discovery, PML agreed to dismiss Hartford from this action. (11/09/05 Stip. Order.) It is also the court's recollection that during the August 10, 2005 conference, ACG expressed concern that by engaging in the limited discovery it would suffer prejudice, possibly in the form of waiver or an allegation of delay, regarding its intention to file a change of venue motion. The court indicated, and the parties agreed that Defendants would not suffer any prejudice as a result of the delay associated with the discovery period.

The parties completed their discovery and the court conducted another status conference on October 19, 2005. During the conference, PML expressed that it would need a week to decide whether to dismiss Hartford from the action and ACG indicated that it would be filing a motion challenging venue in the following two weeks. The court notes, however, that these timeframes were not express orders, but were general guidelines provided for the parties. The court noted the dates on its internal docket, with the intention of following up with the parties if they drastically departed from the timeframes. While the parties did not strictly follow these guidelines, they were only marginally late. PML eventually stipulated to the dismissal of Hartford on November 9,

3

2005, over three weeks after the conference and ACG filed its motion to dismiss on

November 8, 2005.[1]

ACG raises three issues in its motion to dismiss: improper venue, lack of

personal jurisdiction, and lack of subject matter jurisdiction based on the amount in

controversy.

RTP filed a motion to dismiss based on five issues: insufficient service of

process, improper venue, lack of subject matter jurisdiction, failure to "aver with

particularity any chargeable action/prosecutable [sic] offense," and lack of personal

jurisdiction.  (RTP's Mot. Br. at 3)[2]

## II.  STANDARD

Defendants bring their motions under Federal Rule of Civil Procedure Rule 12

which provides, in part:

> Every defense, in law or fact, to a claim for relief in any pleading, whether
> a claim, counterclaim, cross-claim, or third-party claim, shall be asserted
> in the responsive pleading thereto if one is required, except that the
> following defenses may at the option of the pleader be made by motion:
> (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over
> the person, (3) improper venue, (4) insufficiency of process, (5)
> insufficiency of service of process, (6) failure to state a claim upon which
> relief can be granted, (7) failure to join a party under Rule 19. A motion
> making any of these defenses shall be made before pleading if a further
> pleading is permitted.

Fed. R. Civ. P. 12(b).

---

[1]The court thus rejects PML's contention that Defendants' motions should be
denied because they were filed four days beyond any court-ordered deadline.

[2]The court notes that both of the motion briefs filed by ACG and RTP do not
contain page numbers, which makes citations to them problematic.  The court will use
the page numbers automatically generated when their documents were scanned into
the electronic docket.

Where a defendant brings a motion to dismiss on multiple grounds under Federal

Rule of Civil Procedure 12, courts are " bound to consider the 12(b)(1) motion first,

since the [alternative] challenge[s] become[] moot if th[e] court lacks subject matter

jurisdiction." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th

Cir.1990) (citing *Bell v. Hood*, 327 U.S. 678, 682 (1946)).

### III.  DISCUSSION

### A.  Subject Matter Jurisdiction

The court will first address Defendants' challenges to the court's subject matter

jurisdiction.  In its First Amended Complaint, ACG asserted subject matter jurisdiction

through diversity of citizenship, alleging that the amount in controversy exceeded

$75,000.  ACG and RTP both challenge that averment and move for dismissal under

Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.  "In a

federal diversity action, the amount alleged in the complaint will suffice unless it appears

to a legal certainty that the plaintiff in good faith cannot claim the jurisdictional amount."

*Klepper v. First American Bank,* 916 F.2d 337, 340 (6th Cir. 1990) (citing *St. Paul*

*Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 288-89, 58 S.Ct. 586, 590, 82 L.Ed.

845 (1938)).  "Where subject matter jurisdiction is challenged pursuant to 12(b)(1), the

plaintiff has the burden of proving jurisdiction in order to survive the motion."  *See Mich.*

*S. R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n., Inc.,* 287 F.3d 568, 573

(6th Cir. 2002) (citing *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269

(6th Cir.1990)).

ACG asserts that the amount in controversy is less than $75,000.00 jurisdictional

requisite because Plaintiff's "agreement with ACG requires Plaintiff to first pay the first

5

one million dollars ($1,000,000.00) of medical indemnity and other costs on claims arising from the parties agreement."  (ACG's Br. at 12-13.)  ACG thus argues that "when the contract is considered together with Plaintiff's allegations, the amount in controversy, if any exists at all, is conceivably much less than $75,000.00."  (*Id.* at 12-13.).  RTP has adopted this argument in its own motion to dismiss.  (RTP's Resp. Br. at 12.)[3]  The court finds that Defendants' argument is without merit, and holds that Plaintiff's amended complaint sufficiently vests this court with subject matter jurisdiction.

First, Defendants' argument, at most, may address those counts asserted against ACG that may have contractual defenses, but it certainly does not address all seven of PML's counts, nor does it take into account that the Amended Complaint was asserted against ACG along with Hartford and RTP.  *See Klepper v. First American Bank,* 916 F.2d 337, 340 (6th Cir. 1990) (citing *Worthams v. Atlanta Life Ins. Co.,* 533 F.2d 994, 997 (6th Cir.1976)) ("When determining whether the amount in controversy has been satisfied, we examine the complaint at the time it was filed.").  While ACG *may* be entitled to this defense, there is no allegation that Hartford and RTP would also be entitled to this defense.  Furthermore, the court is not convinced that it is appropriate to discount PML's assertion of damages by ACG's defense.  *See, e.g., Rosen v. Chrysler*

---

[3]The court notes that PML did not respond at all to this argument in its response to ACG's motion, but did address it in response to RTP's motion.  This could be due to the organizational structure of ACG's brief, which did not contain a table of contents or a statement of the issues presented at the beginning of the brief, but rather contained three separate sections.  Each section began on a separate page with a statement of the issue and short answer, followed by the argument and, ultimately, the conclusion. This format, which departs from the traditional briefing format and is not in strict compliance with the local rules, makes it possible that PML simply overlooked the last section of the brief relating to the jurisdictional amount.

6

*Corp.*, 205 F.3d 918, 921 (6th Cir. 2000) ("[I]n cases where a plaintiff seeks to rescind a contract, the contract's entire value, without offset, is the amount in controversy.") (citing numerous authorities for the proposition that offset should not be considered in determining amount in controversy).

The court is not persuaded to "a legal certainty" that PML cannot claim in good faith claim the jurisdictional amount, especially given the large breadth of PML's seven-count amended complaint which sought, among other things, reimbursement of the $38,000 in premiums it made to ACG, an order requiring Hartford, ACG and RTP to pay all workers compensation claims that have already been brought,[4] and an order of specific performance requiring Hartford, ACG and RTP to indemnify PML for future workers compensation claims. *See Klepper,* 916 F.2d at 340. Defendants' motions for dismissal under Rule 12(b)(1) are therefore denied.

### B. Failure to Correctly Name RTP

Defendant RTP argues that service on RTP was improper, in that the wrong entity has been named in this action. First, the court finds that any objection to the *method* of service on RTP has been waived for failure to assert it in the first responsive pleading. *See* Fed. R. Civ. P. 12(h). Although RTP asserted objections related to improper venue and lack of personal jurisdiction, it did not assert any objection to the method of service. In any event, RTP has made clear that it is not asserting any defect in the method of service. (*See* RTP Reply at 1.) Rather, RTP claims that it is not a proper party to this lawsuit because RTP is a sole proprietorship operated completely by

---

[4]Indeed, according to PML, just one of those claims is in excess of one million dollars. (*See* PML's Resp. Br. to RTP's Mot. at 11.)

its owner John Gilchrist, and is not a legal entity subject to suit under its own name.

Plaintiff provides no authority for the proposition that a sole proprietorship cannot be

sued under its own name and, as discussed below, the court finds North Carolina law to

be to the contrary.

The owner of RTP, John Gilchrist, has appeared on behalf of RTP and has been

representing RTP *pro se.* In the instant motion, Mr. Gilchrist argues that RTP has no

legal existence apart from Mr. Gilchrist and PML's complaint should have been

amended to reflect Mr. Gilchrist as a party rather than RTP. (RTP Reply at 2.) Mr.

Gilchrist further asserts that, because PML has failed to do so, its complaint should be

dismissed as to RTP. (*Id.*) The court disagrees.

In an almost factually identical case, the North Carolina court has held that

"[o]rdinarily, an amendment of process and pleading may be allowed in the discretion of

the court to correct a misnomer or mistake in the name of a party." *Bailey v.

McPherson,* 63 S.E.2d 559, 562 (N.C. 1951). In *Bailey*, as here, the plaintiff incorrectly

identified the defendant as a corporation rather than a sole proprietorship. The court

held that due process was not violated by amending the pleadings where "the defendant

Winkler, the person who is the sole owner and proprietor of the entity intended to be

sued, received by registered mail and personally receipted for the notice of service with

a copy of the summons and complaint, the contents of which gave unmistakable notice

that it was he who was intended to be sued." *Id.* at 564. The facts of the instant case

are indistinguishable, and the court will therefore follow *Bailey*'s directive that "if the

misnomer or misdescription does not leave in doubt the identity of the party intended to

be sued, or, even where there is room for doubt as to identity, if service of process is

8

made on the party intended to be sued, the misnomer or misdescription may be corrected by amendment *at any stage of the suit*." *Id.* at 562 (emphasis added); *Blue Ridge Elec. Membership Corp. v. Grannis* Bros., 58 S.E.2d 748, 750 (N.C. 1950) ("Under the comprehensive power to amend process and pleadings, where the proper party is before the court, although under a wrong name, an amendment will be allowed to cure the misnomer."); *see also Harris v. Maready*, 319 S.E.2d 912, 919 (N.C. 1984) ("In general, courts are more reluctant to permit amendment of process or pleadings to change a description of a party as an individual or partnership to that of a corporation than they are to permit amendment to change the description of a party as a corporation to that of an individual or partnership, because of the prescribed statutory method of serving a corporation."). In such circumstances, "[s]ubstitution in the case of a misnomer is not considered substitution of new parties, but a correction in the description of the party or parties actually served." *Grannis Bros.*, 58 S.E.2d 748, 751 (N.C. 1950).

Mr. Gilchrist has appeared on behalf of RTP, filed multiple motions on behalf of RTP, and acknowledges that RTP and John Gilchrist are one and the same. There is no dispute that RTP has been validly served, and that Mr. Gilchrist has at all relevant times had, at least, actual notice of this lawsuit. The court finds that Mr. Gilchrist's formalistic argument has no substantive merit. The distinction between Mr. Gilchrist and RTP, by Mr. Gilchrist's own assertions, is nothing more than a "doing business as" distinction, which the court notes does not require separate service or notice to the "d/b/a" parties. Since Mr. Gilchrist and RTP are essentially the same entity, the court finds RTP's argument to be in vain and will deny the motion.

9

The parties are, however, directed to confer and, unless Plaintiff presents some valid objection, present to the court a stipulation amending the pleadings and caption of this case to correctly reflect the proper name of Defendant RTP as "John Gilchrist d/b/a RTP Insurance and Financial Associates of Durham, NC."  The stipulation and proposed order shall be submitted to the court within twenty-eight days of the date of this order. No additional service of the summons or complaint will be necessary.

### C.  Lack of Personal Jurisdiction over RTP and ACG

If a district court lacks jurisdiction over the defendants, dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(2).  "The burden of establishing jurisdiction is on the plaintiff."  *Tobin v. Astra Pharm. Prod., Inc.*, 993 F.2d 528, 543 (6th Cir. 1993). If the district court does not conduct an evidentiary hearing on the matter of personal jurisdiction, the plaintiff must make only a prima facie showing of jurisdiction.  *See Dean v. Motel 6 Operating L.P.,* 134 F.3d 1269, 1272 (6th Cir.1998).  In such a case, the plaintiff must "'demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss.'" *Welsh v. Gibbs,* 631 F.2d 436, 438 (6th Cir. 1980) (quoting *Data Disc, Inc. v. Sys. Tech. Assocs.,* 557 F.2d 1280, 1285 (9th Cir. 1977)).  Further, a court does not weigh the controverting assertions of the party seeking dismissal.  *Dean,* 134 F.3d at 1272 (quoting *CompuServe, Inc.,* 89 F.3d at 1262).

A federal court's exercise of jurisdiction over litigants in a diversity of citizenship case must be both "(1) authorized by the law of the state in which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment."  *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 888 (6th Cir. 2002).

10

Where, as in this case, the state's long-arm statute extends to the limits of the Due Process Clause, the two inquiries merge. *See Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 793 (6th Cir. 1996); *Sports Authority Michigan, Inc. v. Justballs, Inc.*, 97 F. Supp. 2d 806, 810 (E.D. Mich. 2000) ("The Michigan Supreme Court has construed Michigan's long-arm statute to bestow the broadest possible grant of personal jurisdiction consistent with due process.") (citing *Sifers v. Horen,* 188 N.W.2d 623 (Mich. 1971)); *see also Chrysler Corp. v. Fedders Corp.,* 643 F.2d 1229, 1236 (6th Cir. 1981) (noting that Michigan's long-arm statute confers "on the state courts that maximum scope of personal jurisdiction permitted by the Due Process Clause of the Fourteenth Amendment").

Due process is satisfied if the defendant has "sufficient minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fairplay and substantial justice." *Internat'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (citation omitted). In analyzing the due process limits on personal jurisdiction, courts distinguish two different means for exercising jurisdiction: general jurisdiction and specific jurisdiction. *Conti v. Pneumatic Prods.*, *Corp.*, 977 F.2d 978, 981 (6th Cir. 1992). There does not appear to be any dispute that Defendants RTP and ACG are not subject to general jurisdiction in Michigan.[5]   Rather, the parties focus on whether there is specific jurisdiction over Defendants in Michigan.

---

[5] General jurisdiction is proper only when a defendant's contacts with the forum state are continuous and systematic, permitting the court to exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state. *Helicoperos Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984); *Youn v. Track, Inc.*, 324 F.3d 409, 418 (6th Cir. 2003); *Bird*, 289 F.3d at 873.

11

"[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Ultimately, the defendants' conduct and connection with the forum must be such that they "should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 474 (1985). The Sixth Circuit has formulated the following three-part test to capture the due process considerations for specific personal jurisdiction (the "*Mohasco* factors"):

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

In this case, PML alleges that it contracted with ACG, through ACG's insurance broker, RTP, for ACG to provide worker's compensation insurance for PML's employees, its PEO's and its PEO's customers. (Am. Comp. at ¶ 12.) PML asserts that this coverage is confirmed by certificates of liability insurance ("Certificates"), which identified PML, its PEOs and the PEO's customers as insureds. (*Id.*) According to PML's allegations, ACG is in breach of its contract with PML, a Michigan company with whom it knowingly contracted. (*Id.* at 44-47.) PML, its PEOs and the PEO's customers, some of whom are also in Michigan, have suffered damages in Michigan as a result of ACG's breach. (Pl.'s Resp. Br. to ACG's Mot. at 12.) Moreover, PML has also alleged that ACG and/or RTP have misrepresented the existence of insurance coverage, and

12

entered into a conspiracy to convert PML's insurance premiums with no intention of providing worker's compensation insurance. (*See* Pl.'s Count V & VII.) There have also been subsequent allegations regarding the fraudulent nature of certain documents which PML contends were provided by ACG and/or RTP. Under these facts, the court finds that PML has established a prima facie case for the exercise of personal jurisdiction over both ACG and RTP.

Plaintiff's allegations, if proven, would establish that Defendants purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state through ACG's contracting with PML, both parties' activities in locating an insurance provider (Hartford) for PML and, additionally, their alleged conspiracy and fraudulent misrepresentations to PML regarding the purported insurance coverage. PML's cause of action clearly arises from these activities and, finally, Defendants' activities and the consequences caused by them have have a substantial enough connection with Michigan to make the exercise of jurisdiction over Defendants reasonable. *Mohasco*, 401 F.2d at 381.

While it is true that both ACG and RTP vigorously dispute PML's allegations, including the allegations regarding their connections to Michigan, the court must accept PML's allegations as true. Because the court is not conducting an evidentiary hearing, the court must not weigh Defendants' controverting assertions.[6] *Dean,* 134 F.3d at

---

[6] The court finds that the use of an evidentiary hearing in this case would not be appropriate. The parties dispute regarding Defendants' activities that allow the exercise of personal jurisdiction are the same factual disputes which will control the outcome of this litigation. Conducting an evidentiary hearing on this issue would ultimately entail the determination of Plaintiff's entire case, which is inappropriate at this stage of the litigation.

1272 (quoting *CompuServe, Inc.,* 89 F.3d at 1262).  Thus, the court finds that PML has

met its burden of establishing a prima facie case of personal jurisdiction.[7]

### D.  RTP's Request for Summary Judgment

RTP has also moved for summary judgment on all of PML's claims.  (RTP's Mot.

Br. at 12.)  Under Federal Rule of Civil Procedure 56, summary judgment is proper

when there is no genuine issue as to any material fact and the moving party is entitled

to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The court finds that, even at this

early stage in the litigation, before PML has had an adequate opportunity to pursue

extensive discovery, RTP has failed to meet its burden of establishing that it is entitled

to judgment as a matter of law.  *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987)

(citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) ("Where the moving party has

carried its burden of showing that the pleadings, depositions, answers to interrogatories,

admissions and affidavits in the record construed favorably to the non-moving party, do

---

[7]  The court is also inclined to find that both Defendants have waived any objection to personal jurisdiction.  Both Defendants indeed asserted an objection in their first responsive pleading pursuant to Fed. R. Civ. P. 12(h).  (ACG's "Pre-Answer Motions" at ¶ 4; RTP's Answer at Response # 6.)  Defendants, however, have subsequently waived the objection through their participation in this lawsuit.  *See Creech v. Roberts*, 908 F.2d 75, 84 (6th Cir. 1990) (Guy, J., concurring in part, dissenting in part) (noting that parties can waive jurisdiction by implication despite initially asserting it in their answers).  While Defendants reserved their right to bring a motion regarding venue after the parties conducted their limited discovery, neither RTP nor ACG reserved their personal jurisdiction challenge.  Thus, even it the court were to find that personal jurisdiction was lacking over one or both of the defendants, the court would nonetheless hold that they have waived any personal jurisdiction challenge.

14

not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate.").  The court will therefore deny RTP's motion.[8]

### E.  Venue

Finally, both Defendants challenge the court's venue under Federal Rule of Civil Procedure 12(b)(3).  Contrary to PML's protestations, the court finds that both parties initially raised a venue objection in their first responsive pleadings.  (ACG's "Pre-Answer Motions" at ¶ 2; RTP's Ans. at Resp. # 6.)  Further, as discussed in the Background section above, Defendants specifically reserved the right to bring a venue motion when it agreed to conduct limited discovery.  Accordingly, Defendants have not waived their ability to challenge venue.

ACG asserts that venue is improper in the Eastern District of Michigan and the case should accordingly be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(3).  Although ACG argues that North Carolina is a more convenient forum, it does not specifically request that in the event the court finds venue to be proper in the Eastern District of Michigan, then the court should nonetheless transfer the case to a federal district court in North Carolina.  RTP, however, has requested that the court dismiss the case or, alternatively, transfer the case to a more convenient forum.  (*See* RTP's Mot. Br. at 14.)  The court will thus discuss whether a dismissal or, alternatively, a transfer of venue is appropriate.

---

[8]To the extent that RTP challenges PML's factual averments under its "Fraud and Misrepresentation" count, the court finds that PML's allegations satisfy the requirements of Federal Rule of Civil Procedure 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.").

15

### 1. Dismissal for Improper Venue

Because federal subject matter jurisdiction in this case is based solely on diversity of citizenship under 28 U.S.C. § 1332, venue is governed by 28 U.S.C. § 1391(a). "A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . ., or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(a). Additionally, 28 U.S.C. § 1406 states: "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interests of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Section 1406 applies only where venue is improper. *Audi AG & Volkswagen,* 204 F. Supp. 2d 1014, 1022 (E.D. Mich. 2002) (citing *Van Dusen v. Barrack,* 376 U.S. 612, 634 (1964)).

The court can quickly deny the motion to dismiss because this action was appropriately brought in Michigan, in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." *Id.* The Amended Complaint alleges, among other things, that Defendants: conspired to convert the funds of a Michigan company; failed to fulfill contractual obligations entered into with a Michigan company; and failed to provided insurance coverage to multiple Michigan entities. (Am. Comp. ¶¶ 38-51.) Under these circumstances, the court is satisfied that Plaintiff has

16

met its burden of establishing that it brought the complaint in the proper venue, and will

deny the motion to dismiss.[9]

## 2. Transfer of Venue

Transfer of proper venue is governed by 28 U.S.C. § 1404(a), which provides

that "[f]or the convenience of parties and witnesses, in the interest of justice, a district

court may transfer any civil action to any other district or division where it might have

been brought."  28 U.S.C. § 1404(a).  This provision is "intended to place discretion in

the district court to adjudicate motions for transfer according to an 'individualized, case-

by-case consideration of convenience and fairness.'"  *Stewart Org., Inc. v. Ricoh Corp.*,

487 U.S. 22, 29 (1988) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).  "A

district court 'has broad discretion to grant or deny a motion to transfer [a] case.'"

*Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994) (citing *Cote v. Wadel,* 796 F.2d

981, 985 (7th Cir. 1986)).

To transfer an action under § 1404(a) the following three requirements must be

met: "(1) the action could have been brought in the transferee district court; (2) a

transfer serves the interest of justice; and (3) a transfer is in the convenience of the

witnesses and parties."  *Kepler v. ITT Sheraton Corp.*, 860 F. Supp. 393, 398 (E.D.

Mich. 1994).  Factors to consider in determining whether to transfer venue include:

---

[9]The court also notes that the forum selection clause on which Defendants rely
bears no weight in the court's analysis of whether venue is proper.  *Kerobo v.
Southwestern Clean Fuels, Corp.*, 285 F.3d 531, 536 (6th Cir. 2002) ("[I]f venue is
proper under the statute, a motion to transfer for improper venue will not lie.").  In
*Kerobo*, the Sixth Circuit held that Federal Rule of Civil Procedure 12(b)(3) was not the
proper vehicle by which to attempt to enforce a forum selection clause.  *Id.*  It will,
however, become a factor in the decision of whether to transfer venue under 28 U.S.C.
§ 1404(a).  *Id.* at 537-38.

(1) the convenience of witnesses;
(2) the location of relevant documents and relative ease of access to sources of proof;
(3) the convenience of the parties;
(4) the locus of the operative facts;
(5) the availability of process to compel the attendance of unwilling witnesses;
(6) the relative means of the parties;
(7) the forum's familiarity with the governing law;
(8) the weight accorded the plaintiff's choice of forum; and
(9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Overland, Inc. v. Taylor*, 79 F. Supp. 2d 809, 811 (E.D. Mich. 2000). Additionally, the party seeking transfer of venue usually has the burden to establish that the new forum is more convenient. *Viron Inter. Corp. v. David Boland Inc.*, 237 F. Supp. 2d 812, 815 (W.D. Mich. 2002). The court also recognizes that, under the broad language of the venue statutes, "it is quite possible for venue to exist in more than one forum." *Audi AG & Volkswagen of Amer.*, 204 F. Supp. 2d 1014, 1022 (E.D. Mich. 2002).

As an initial matter, the court finds that this case could have been brought in North Carolina. Both Defendants are North Carolina citizens, and, further, a substantial portion of the events giving rise to this action occurred in North Carolina. *See* 28 U.S.C. § 1391(a). The court therefore turns to an analysis of whether the transfer serves the interest of justice whether a transfer is in the convenience of the witnesses and parties. *Kepler v. ITT Sheraton Corp.*, 860 F. Supp. 393, 398 (E.D. Mich. 1994).

In this case, both Defendants rely primarily on a forum selection clause found in the alleged contract between ACG and PML.[10]  It is true that the forum selection clause

---

[10]The relevant forum selection clause provides that "[t]he parties submit to the exclusive jurisdiction and venue of any state or federal court sitting in Durham County, North Carolina in any action or proceeding arising out of this Agreement."  (ACG's Mot.,

18

is entitled to some weight in the court's analysis.  The Supreme Court has directed that in evaluating a motion for transfer of venue, courts also consider whether the parties agreed to an enforceable forum selection clause.  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988)*; Kerobo v. Southwestern Clean Fuels, Corp.*, 285 F.3d 531, 537-38 (6th Cir. 2002).   In *Stewart*, the Supreme Court held that "federal law, specifically 28 U.S.C. § 1404(a), governs the District Court's decision whether to give effect to the parties' forum-selection clause and transfer [the] case."  *Stewart*, 487 U.S. at 32.  A mandatory forum selection clause, however, is only one factor in the analysis and "should receive neither dispositive consideration . . . nor no consideration" in a district court's § 1404(a) analysis.  *Id.* at 31.

Even assuming that the existence of the forum selection clause weighs in favor of transferring this case to North Carolina, Defendants have not met their burden of establishing that the balance of the remaining factors also compel transfer.  Indeed, the only other factor which Defendants even arguably discuss is the convenience of the parties, in that both Defendants are North Carolina companies.  The court should not transfer a case where the transfer would simply exchange the inconvenience of one party for that of the other.  *Superior Consulting Co., Inc. v. Walling,* 851 F. Supp. 839, 845 (E.D. Mich. 1994) .  While North Carolina may be a more convenient forum for Defendants, Michigan is a more convenient forum for Plaintiff.

Further, although Defendants have not briefed the remaining factors, based on the court's limited knowledge of the underlying issues in this case, it does not appear

---

Ex. 1 at 8.)

that the remaining factors weigh in favor of transfer. Neither party has presented the

court with a list of potential witnesses who will testify at trial, which the court could

review in determining the convenience of the witnesses. *See Thomas v. Home Depot,*

*U.S.A., Inc.*, 131 F. Supp. 2d 934, 937 (E.D. Mich. 2001). The forum's familiarity with

the law to be applied does not favor either district at this stage in the litigation, inasmuch

as what law will be applied remains an unresolved and unbriefed issue that could favor

either venue. Further, although there is no assertion with respect to access to

documents, even if the alleged fraudulent documents were created or exist in North

Carolina, their location is a less significant factor in this "era of photocopying, fax

machines, and Federal Express." *Choker v. Bank of Am.*, 984 F. Supp. 757, 766

(S.D.N.Y. 1997). This case involves the business relationship between two North

Carolina companies and a Michigan company and both states have a legitimate claim

the locus of the operative facts.

Finally, the court considers one remaining factor, which is that Plaintiff initially

brought this action in Michigan. Courts generally grant deference to a plaintiff's chosen

forum, especially where, as here, the plaintiff resides in his chosen jurisdiction. *Thomas*

*v. Home Depot, U.S.A., Inc.*, 131 F. Supp. 2d 934, 937 (E.D. Mich. 2001).

In light of all these considerations, the court finds that Defendants have not met

their burden of persuading the court that North Carolina is a more convenient forum,

and their motions will be denied. *See Catalano v. BRI, Inc.,* 724 F.Supp. 1580, 1583

(E.D. Mich.1989) ("Unless the balance of conveniences is strongly in favor of the

defendants, plaintiffs' choice of forum should not be disturbed.") (citing *Gulf Oil Corp. v.*

*Gilbert,* 330 U.S. 501 (1947)).

20

## IV.  CONCLUSION

IT IS ORDERED that Defendant ACG's "Motion to Dismiss" [Dkt. # 41] is

DENIED and Defendant RTP's "Motion to Dismiss, or in the Alternative, Motion for

Summary Judgment, or in the Alternative, Motion for Change of Venue" [Dkt. # 50]  is

DENIED.

IT IS FURTHER ORDERED that RTP's "Motion for Ruling" [Dkt. # 54], in which

RTP requests that the two motions to dismiss be heard on the same date, is DENIED as

moot.

Finally, the parties are DIRECTED to submit to the court a stipulation and

proposed order which would correct any deficiency or misnomer in the pleadings

regarding Defendant RTP.  The stipulation and proposed order shall be submitted to the

court within twenty-eight days of the date of this order.  No additional service of the

summons or complaint will be necessary

                                               S/Robert H. Cleland
                                               ROBERT H. CLELAND
                                               UNITED STATES DISTRICT JUDGE

Dated:  February 13, 2006

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, February 13, 2006, by electronic and/or ordinary mail.

                                               S/Lisa Wagner
                                               Case Manager and Deputy Clerk
                                               (313) 234-5522