UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PML NORTH AMERICA, LLC,

         Plaintiff,

                                  Case No. 05-CV-70404-DT

v.

                                  Hon. Robert H. Cleland

HARTFORD UNDERWRITERS INSURANCE
COMPANY, ACG ENTERPRISES OF NC, INC.,
and JOHN E. GILCHRIST d/b/a RTP INSURANCE
& FINANCIAL ASSOCIATES OF DURHAM, NC,

         Defendants.

---

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT ACG ENTERPRISES
OF NC, INC.'S PRODUCTION OF COMPUTER EQUIPMENT AND TO
EXPAND RELEVANT TIMEFRAME FOR COMPUTER INSPECTION**

Plaintiff PML North America, LLC ("PML") moves this Court pursuant to Fed. R. Civ.

P. 37 to issue an order (1) compelling Defendant ACG Enterprises of NC, Inc. ("ACG") to

produce computer equipment, which it failed to produce in response to PML's Request for

Inspection, and (2) expanding the timeframe of November 1, 2004 to March 31, 2005 for the

inspection of files set forth in the Order Regarding Electronic Discovery Protocol to November

1, 2004 to the present.  Pursuant to L.R. 7.1, PML states that it sought, but did not receive,

ACG's concurrence with this Motion.

First, the forensic examination of ACG's hard drives has uncovered the fact that ACG

has intentionally withheld the following computer equipment from inspection:

    (1)    Hard Drive identified as 40GB IBM Deskstar HD, model IC2N040ATCS04-0,
           used on Carlos Brown's laptop;

    (2)    Hard Drive used on Charles Thomke's computer;

(3)    USB Storage Device identified as "Disk&Ven_Memorex&Prod_ThumbDrive&
Rev_1.11" and used on Mr. Brown's laptop and one of ACG's desktop
computers; and

(4)    Back-up Target Disk identified as "\\storage\cbrown" and used when ACG's ran
Norton Ghost 9.0 Software program.

Second, the timeframe set forth in the Order Regarding Electronic Discovery Protocol
should be expanded to allow PML to search files and e-mails on ACG's hard drives from
November 1, 2004 to the present because the forensic analysis of ACG's hard drives has
disclosed ACG's use of Norton Ghost 9.0 Software program, which was used to create back-up
images of files and re-install certain files.    As a result of the use of this software, files and e-
mails which were originally created and used during the relevant time period in this action may
not have been inspected because they contain metadata with creation dates, last used dates, and
printed dates that are outside of the computer inspection timeframe of November 1, 2004 to
March 31, 2005 that this Court ordered.

WHEREFORE, for the reasons discussed more fully in the attached Brief in Support and
the exhibits attached thereto, PML respectfully requests that this Court grant its Motion to
compel ACG to produce the missing computer equipment, to expand the timeframe of the
computer inspection to the present, and to award attorneys' fees and costs to PML for having to
file this Motion, as well as, the additional costs and expenses incurred by PML's expert for the
follow-up work that is necessary due to ACG's deliberate actions.

Respectfully submitted,

BUTZEL LONG

/s/_____Katherine D. Goudie_____
Michael G. Latiff (P51263)
Maureen T. Taylor (P63547)
Katherine Donohue Goudie (P62806)
150 West Jefferson, Suite 100
Detroit, MI  48226-4450
(313) 225-7000
E-mail: latiff@butzel.com
        taylorm@ butzel.com
        goudie@butzel.com
Attorneys for Plaintiff

Dated:  August 30, 2006

/866002/

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PML NORTH AMERICA, LLC,

        Plaintiff,

                                Case No. 05-CV-70404-DT

v.

                                Hon. Robert H. Cleland

HARTFORD UNDERWRITERS INSURANCE
COMPANY, ACG ENTERPRISES OF NC, INC.,
and JOHN E. GILCHRIST d/b/a RTP INSURANCE
& FINANCIAL ASSOCIATES OF DURHAM, NC,

        Defendants.

---

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO COMPEL DEFENDANT ACG
ENTERPRISES OF NC, INC.'S PRODUCTION OF COMPUTER EQUIPMENT
<u>AND TO EXPAND RELEVANT TIMEFRAME FOR COMPUTER INSPECTION</u>**

## STATEMENT OF THE ISSUES PRESENTED

I.      Whether this Court should order Defendant ACG to produce missing computer equipment when the computer forensic examination of the hard drives that ACG did produce uncovered the fact that ACG used two hard drives, one USB storage device, and a back-up target disk but failed to produce this equipment in response to PML's Request for Inspection?

      Plaintiff PML answers:          Yes


II.     Whether this Court should expand the timeframe of November 1, 2004 to March 31, 2005 for the inspection of files pursuant to the Order Regarding Electronic Discovery Protocol and allow PML to search ACG's hard drives for files and e-mails from November 1, 2004 to the present when the computer forensic examination disclosed the fact that ACG ran a Norton Ghost Software program to remove and reinstall files after March 31, 2005?

      Plaintiff PML answers:          Yes

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

Fed. R. Civ. P. 37

# I.  INTRODUCTION

This case involves the creation of fraudulent certificates of insurance and an insurance coverage letter, which falsely indicated that Plaintiff PML North America, LLC ("PML") had workers' compensation insurance coverage for itself, its professional employment organizations, and their clients.    The computer forensic examination of the Defendants' computers has uncovered and confirmed fraud on the part of Defendant ACG Enterprises of NC, Inc. ("ACG"). Indeed, the insurance coverage letter that was allegedly faxed by the insurance company was located on ACG's computers as a Microsoft Word document.    Based on the results of the computer examination, PML plans to file a motion for summary judgment.

Through the computer forensic analysis, PML also discovered that ACG committed a second fraud by (1) failing to produce additional computer equipment and (2) by using a software program that would allow ACG to create back-images of files, reinstall those files, and change their metadata.

First, for the reasons discussed below, PML requests that this Court order ACG to produce the following items, which appear to have been intentionally withheld:

(1)    Hard Drive identified as 40GB IBM Deskstar HD, model IC2N040ATCS04-0, used on Carlos Brown's laptop;

(2)    Hard Drive used on Charles Thomke's computer;

(3)    USB Storage Device identified as "Disk&Ven_Memorex&Prod_ThumbDrive& Rev_1.11" and used on Carlos Brown's laptop and one of ACG's desktop computers; and

(4)    Back-up Target Disk identified as "\\storage\cbrown" and used when ACG ran Norton Ghost 9.0 Software program.

4

Second, PML requests that this Court expand the inspection date range of November 1, 2004 through March 31, 2005 for files and e-mails, as set forth in the Order Regarding Electronic Discovery Protocol for Retrieval of Information from Defendants' Hard Drives, to November 1, 2004 to the present. Through the use of a software program, Norton Ghost 9.0,[1] ACG created back-up images of files, deleted or destroyed (or failed to produce) the original versions, and then reinstalled the files that it wanted to recover from the back-ups. Through this reinstallation process by ACG, which appears to have occurred mainly during April and September 2005, the "reinstalled" files have new creation and user dates in the metadata that falls outside the Court-ordered timeframe for the inspection of November 1, 2004 to March 31, 2005. As a result of ACG's intentional misconduct, PML may have been unable to inspect and review some critical files and e-mails which were originally created and used during the relevant time period.

Therefore, PML requests that this Court grant its Motion to compel ACG to produce the missing computer equipment, to expand the timeframe of the computer inspection to the present, and to award attorneys' fees and costs to PML for having to file this Motion, as well as, the additional costs and expenses incurred by PML's expert for the follow-up work that is necessary due to ACG's deliberate actions.

---

[1] PML discovered the use of this software by ACG because, in a few instances, PML's computer forensic expert was able to run a recovery program that confirmed the existence of certain deleted files being used during the relevant time period, and when PML's expert began to search for the "active" version of those files, the files displayed a creation date that was after the relevant time period, after the Court-ordered timeframe for the inspection, and after that true date that ACG originally used the files. (*See* **Exhibit B**, Results of Computer Forensic Analysis: ACG-Analysis Only, 13-15.)

## II.  STATEMENT OF RELEVANT FACTS

### A.    <u>Procedural History</u>

On May 10, 2005, PML filed a First Amended Complaint in this action on to include

ACG and John Edward Gilchrist, d/b/a RTP Insurance and Financial Associates of Durham, NC

("RTP") as Defendants.  PML added ACG and RTP as parties to this litigation after Defendant

Hartford Underwriters Insurance Company denied issuing certificates of insurance, which

demonstrated workers' compensation insurance coverage for PML, PML's professional

employment organizations, and their clients, and a December 8, 2004 coverage letter

(collectively referred to as "the fraudulent documents").  Accordingly, the issue in this case

involved whether ACG or RTP, or both, created the fraudulent documents and led PML to

believe that it had workers' compensation insurance coverage.

During the Fed. R. Civ. P. 26 Scheduling Conference with this Court on March 30, 2006,

PML informed the Court and the parties of its intention to conduct inspections of ACG and

RTP's computers because PML was unable to discover which party was responsible for the

creation of the fraudulent documents through the limited discovery and depositions pursuant to

"Phase I" of discovery.  On June 14, 2006, after the parties agreed to conduct the computer

inspection on June 21, 2006, PML served a Request for Inspection of Computers and Other

Electronic Equipment on ACG and RTP.  The Request sent to ACG stated:

> Produce for inspection, and copying to the extent deemed
> necessary, every desktop computer, laptop computer, hard drives,
> network and facsimile servers, P.D.A.s, offline storage or
> information stored on removable media, back up tapes, printers,
> facsimile machines, and all other home and office electronic
> equipment and software, including but not limited to all electronic
> equipment and software referenced in the October 5, 2005
> deposition of Charles Thomke (*see* Dep. Tr. at pp. 51-54) and the

October 18, 2005 deposition of Carlos Brown (*see* Dep. Tr. at pp. 24-31, 36-38), that ACG has used from November of 2004 through March of 2005.

**(Exhibit A.)**

On June 21, 2006, counsel for PML and PML's computer forensic expert traveled to ACG's place of business in Durham, North Carolina to conduct the computer inspection and create mirror images of all data storage devices. ACG produced five hard drives for inspection and copying:

(1)    40GB IBM Deskstar hard drive, Model IC35L040AW07, from the desktop of Carlos Brown;

(2)    40GB Seagate hard drive, model ST94019A, from the laptop computer of Carlos Brown;

(3)    40GB Maxtor hard drive, model 6L040J2, from the desktop computer of "Quinton";

(4)    9.1GB Seagate hard drive, model ST39111A, from the front-desk area of ACG's office; and

(5)    9.3GB Maxtor hard drive, model 5T010H1, from a computer that was described as being an office "floater."

(*See* **Exhibit B** at 3.)

A computer forensic examination of the above hard drives uncovered the fact that ACG used the following additional equipment, which it intentionally withheld from production:

(1)    Hard Drive identified as 40GB IBM Deskstar HD, model IC2N040ATCS04-0, used on Carlos Brown's laptop;

(2)    Hard Drive used on Charles Thomke's computer;

(3)    USB Storage Device identified as "Disk&Ven_Memorex&Prod_ThumbDrive& Rev_1.11" and used on Mr. Brown's laptop and one of ACG's desktop computers; and

(4)    Back-up Target Disk identified as "\\storage\cbrown" and used when ACG ran Norton Ghost 9.0 Software program.

**B.    ACG's Failure to Produce Computer Equipment in Response to PML's Request for Inspection**

### 1.    Missing Hard Drive Used on Carlos Brown's Laptop

During the computer forensic examination of the hard drives, PML has discovered that ACG failed to produce two pieces of computer equipment which are directly responsive to PML's Request for Inspection. An examination of the hard drive from a laptop computer, which was used by ACG's owner and president, Carlos Brown, indicated that other hard drives had been connected to the laptop. The examination demonstrated that Mr. Brown used three hard drives on his computer:

(1)    40GB Seagate HD, model ST94019A, which was used by ACG as recently as June 21, 2006[2] and which was produced by ACG in response to PML's Request;

(2)    **40GB IBM Deskstar HD, model IC2N040ATCS04-0 ("IBM Deskstar Hard Drive"), which was used by ACG as recently as April 29, 2005. ACG failed to produce this Hard Drive**; and

(3)    30GB Toshiba, model MK3018GAP, which was used by ACG as recently as August 7, 2004 and which *PML is not requesting for production.*

(*See* **Exhibit B** at 13.)

According to the last used dates for the hard drives listed above, it is logical to conclude that Mr. Brown used the IBM Deskstar Hard Drive on his laptop at some point between August 7, 2004 and April 29, 2005, which includes the relevant time period for this case. ACG did not produce this Hard Drive.

---

[2]  The forensic examination can only confirm the last used date for hard drives and USB storage devices that ACG has failed to produce; the examination does not confirm the initial date, date range, or length of time that the hard drive and USB storage device were in use.

**2.    Missing Hard Drive Used on Charles Thomke's Computer**

The computer forensic examination uncovered a document on ACG's computers entitled "How to produce a Certificate of Insurance." (**Exhibit B** at 18, 26.)  The instructions in this documents stated:

> 1.    Go to Charlie's Computer
> 2.    Click on "Insurance Certs" Folder on his desktop
> 3.    Click on "CRS Clients" Folder

(*Id.* at 26.)

ACG failed to identify any of the computers being produced and their corresponding hard drives as the computer and hard drive used by Mr. Thomke. (*Id.* at 3.)  Furthermore, when searching the hard drives that ACG did produce, none of these hard drives contained any folder entitled "Insurance Certs" or "CRS Clients." (*Id.* at 18.)

According to ACG's own instructions in the "How to produce a Certificate of Insurance" document, Mr. Thomke had use of a computer at ACG, and folders existed on it that were titled "Insurance Certs" and "CRS Clients"; yet, neither of these folders existed on any of the hard drives that were produced by ACG at the inspection on June 21, 2006.  Therefore, ACG has either failed to produce the hard drive used by Mr. Thomke, which contain these folders, or ACG has deleted and destroyed these folders and files on the hard drives that they have produced to PML.[3]

---

[3]  This further supports PML's request to compel the production of the missing IBM Deskstar Hard Drive identified above.

3.    **Missing USB Storage Device Used on ACG's Laptop and Desktop Computers**

The computer inspection also uncovered ACG's use of a USB storage device identified as "Disk&Ven_Memorex&Prod_ThumbDrive&Rev_1.11," which ACG has failed to produce. (**Exhibit B** at 12.)

The examination of Mr. Brown's hard drive demonstrated that he used various USB storage devices on his hard drive. Specifically, Mr. Brown used the following devices:

(1)    "Disk&Ven_Memorex&Prod_TD_2C&Rev_1.00," which was used by ACG as recently as October 28, 2004 on ACG's desktop computer and which *PML is not requesting*; and

(2)    **"Disk&Ven_Memorex&Prod_ThumbDrive&Rev_1.11" ("Memorex USB Device"), which was used by ACG as recently as October 19, 2005 on its desktop computer <u>and</u> on Mr. Brown's laptop. ACG failed to produce this storage device.**

(**Exhibit B** at 12.)

Because the first USB storage device identified above was last used on or around October 28, 2004, and the computer examination demonstrated that the next USB storage device used by ACG was the Memorex USB Device, it is likely that ACG used the Memorex USB Device at some point during the timeframe of October 28, 2004 to October 19, 2005, which includes the relevant time period in this action. (*Id.*) ACG again failed to produce this piece of computer equipment in response to PML's request.

C.    <u>**ACG's Use of Norton Ghost 9.0 Software on Carlos Brown's Laptop Hard Drive**</u>

In addition to ACG's failure to produce the hard drives and USB storage device, PML's expert, while searching the hard drive from Mr. Brown's laptop to inspect files between November 1, 2004 and March 31, 2005 pursuant to the Order Regarding Electronic Discovery

Protocol, performed an analysis of file dates which demonstrated that a large number of files and folders held similar dates, **indicating some type of mass copying or recovery process.** **(Exhibit B** at 13.) For instance, 85% of active or deleted Word files from the laptop, which equaled 799 files, had a creation date of September 24, 2005 and a time range of creation between 3:52 pm and 4:00 pm. (*Id.*) Other common dates also appeared for mass amounts of files such as April 29, 2005 and September 23, 2005. (*Id.*)

In conjunction with the analysis and above discovery, PML's expert located the presence of Norton Ghost 9.0 Software on Mr. Brown's laptop. Norton Ghost software is a program used to remove and re-install files. PML's expert explained the use of Norton Ghost on Mr. Brown's laptop hard drive as follows:

- Norton Ghost enables a user to create a copy of a hard drive, or certain of its folders or files, onto another hard drive or other storage media in the form of a compressed file. This compressed file can then be restored to the existing or new drive, providing a duplicate of the folders, files or entire drive. (Note: In this case, 'entire drive' only includes active files, not the drive's Unallocated Clusters, unless expressly programmed to do so.)

- Based on a file within the Norton Ghost folders, Ghost was scheduled to perform backups beginning on 9-24-05. Scheduled attempts continued until as recently as June 21, 2006.

(*Id.* at 17 (parenthetical in original).)

In other words, the creation dates and usage dates identified in the metadata for mass amounts of files do not reflect the true dates that these files were actually created and used by ACG. These mass amounts of files may contain documents and e-mails which were used by ACG during the relevant timeframe, but which contained metadata that fell outside the Court-

11

ordered timeframe for the inspection.  Therefore, as discussed below, the dates identified in the

metadata are unreliable and unreasonably limited PML's search for fraudulent conduct.

      **1.**      **Unreliability of Metadata Dates for Files and E-mails Which May Have Been Originally Created During the Relevant Timeframe But Which Were Later Removed and Re-Installed with Use of Norton Ghost Software**

             **a.**      **The Need for Expanding the Timeframe for the Inspection of Files**

The issue with the use of Norton Ghost Software is that many relevant documents may

have not been inspected by PML because their metadata dates fall outside the Court-ordered

inspection timeframe of November 1, 2004 to March 31, 2005. In other words, documents and e-

mails that were originally created and used during the relevant time period may have been

removed and then re-installed with the use of Norton Ghost Software, and the "reinstalled" files

would show a later creation date (most likely September 2005) that falls outside of the Court-

ordered inspection timeframe.

For example, ACG located the fraudulent coverage letter on Mr. Brown's hard drive as a

Word document.  (*See* **Exhibit B** at 23.)  The "fax header" was merely a Word header in which

ACG could type in a date, time, and fax number to falsely claim that the document was faxed by

Hartford.  This document is clearly dispositive as to ACG's fraudulent conduct.  This document

fell within the relevant time period because it had a "last time printed" date of December 28,

2004.  (*Id.* at 16.)  The metadata for the same document, however, stated that the creation date

was September 24, 2005 – after the date it was printed and the same day that 798 other files were

"created." (*Id.* at 15.)

This fraudulent document was detected because PML's expert ran a recovery program

and discovered the print date within the Court-ordered timeframe of November 1, 2004 to March

31, 2005.  Other fraudulent documents created during the relevant timeframe may exist on

ACG's hard drives, yet because of ACG's use of Norton Ghost Software in September 2005,

some key fraudulent documents may have gone undetected during the computer inspection

because their metadata dates may be post-March 31, 2005.

### b.    The Additional Need for the IBM Deskstar Hard Drive and the Memorex USB Device Which ACG Has Failed to Produce

Even if ACG attempts to argue that it did not use the IBM Deskstar Hard Drive and the

Memorex USB Device during the relevant timeframe of November 1, 2004 and March 31, 2005,

which is highly unlikely in light of the fact that the IBM Deskstar Hard Drive was last used in

April 29, 2005 as discussed above, the use of Norton Ghost Software means that this equipment

may contain files that were originally created and used during the relevant time period.

For example, ACG used Norton Ghost Software to remove files that were originally

created during the relevant time period (e.g., the fraudulent coverage letter).  ACG then

attempted to reinstall mass amounts of files from a back-up disk and/or drive starting in

September 2005.  The Memorex USB Device was used by ACG as recently as October 2005.

Therefore, the Memorex USB Device was being used by ACG during the same timeframe that

ACG was attempting to re-install certain files that it had removed from its computers.

The same holds true with the IBM Deskstar Hard Drive.  Even if ACG asserts the weak

argument that it only used the IBM Deskstar Hard Drive outside of the Court-ordered timeframe

(which means that ACG would have to claim that it only used the IBM Deskstar Hard Drive for

28 days (April 1, 2005 to April 29, 2005) and that it did not have a hard drive for Mr. Brown's

laptop from August 7, 2004 to April 1, 2005), the use of the IBM Deskstar Hard Drive overlaps

with the time period that ACG was removing files and re-installing certain files using the Norton

Ghost Software. Indeed, in addition to the dates of September 23 and 24, 2005, PML's expert found a mass amount of files that were removed using Norton Ghost Software and that had a "creation"/re-installation date of **April 29, 2005** – the same day that the IBM Deskstar Hard Drive was last used. (**Exhibit B** at 13.) All of this computer activity on April 29, 2005 with the IBM Deskstar Hard Drive and the use of Norton Ghost software suggests that the missing IBM DeskStar Hard Drive contains relevant documents for which PML has been searching. Considering the documents that have been uncovered (e.g., the fraudulent insurance coverage letter), this conclusion is a plausible explanation.

### 2.    Missing Back-Up Target Disk Used with Norton Ghost Software

The computer examination lastly demonstrated that ACG sent back-up files/ghost images during its use of the Norton Ghost Software to a target disk identified as "\\storage\cbrown." ACG also failed to produce this target disk. The discovery of this missing target disk is described by PML's expert as follows:

- One path to which the [Norton] Ghost images were to be sent is: '\\storage\cbrown' There is a .lnk file with nearly this same name. However, there is limited information as to what drive the '\\storage\cbrown' refers, though we do know it is a network drive based on the following error message form the same Ghost log file: *"The network path was not found."*

- Backups were successfully completed up until 12-23-05 at which point the target disk was full of backups as illustrated by the log entry below:

  *"12/25/2005 13:01:25 PM High Priority Error:    An error occurred during a scheduled backup of drive C:\.    Error EA390719: Target disk full"*

- These errors continued through 3-31-06. Shortly thereafter, the error "The network path was not found." Began appearing and continued until the date of the inspection by Spectrum. **Important**

> questions to be answered include knowing the location of this
> target disk containing the Norton Ghost images that was
> referenced as being 'full', knowing the location of the network
> device which became the new target, and why neither was
> made available at the time of the inspection.

(**Exhibit B** at 17 (emphasis added).)

In other words, ACG used a disk and/or drive to back-up all of the files using the Norton

Ghost Software; deleted, destroyed or did not produce the original version (such as the

fraudulent coverage letter which was recovered as a deleted file); and then attempted to re-install

certain files from this back-up disk and drive. ACG, however, failed to produce this back-up

disk and/or drive which would contain the files that were removed from its computers.

### III. ARGUMENT

**A.** **PML Is Entitled to an Order Compelling Discovery Pursuant to Fed. R. Civ. P. 37**
**and Expanding the Timeframe for the Computer Inspection of Files to the Present.**

Federal Rule of Civil Procedure 37(a)(2)(B) provides that if a party fails to answer an

interrogatory submitted under Rule 33, or fails to respond to a request for documents under Rule

34, the discovering party may move for an order compelling an answer. The Rule states in

pertinent part:

> If . . . a party fails to answer an interrogatory submitted under Rule 33, or if a
> party, in response to a request for inspection submitted under Rule 34, fails to
> respond that inspection will be permitted as requested or fails to permit inspection
> as requested, the discovering party may move for an order compelling an answer,
> or a designation, or an order compelling inspection in accordance with the
> request.

*See* Fed. R. Civ. P. 37(a)(2)(B).

Here, despite PML's request to inspect ACG's computer equipment and the parties' agreement to conduct the inspection on May 21, 2006, ACG failed to produce the following equipment:

(1)    Hard Drive identified as 40GB IBM Deskstar HD, model IC2N040ATCS04-0, used on Carlos Brown's laptop;

(2)    Hard Drive used on Charles Thomke's computer;

(3)    USB Storage Device identified as "Disk&Ven_Memorex&Prod_ThumbDrive& Rev_1.11" and used on Mr. Brown's laptop and one of ACG's desktop computers; and

(4)    Back-up Target Disk identified as "\\storage\cbrown" and used when ACG ran Norton Ghost 9.0 Software program.

As discussed above, the missing hard drives, USB storage device, and back-up target disk may contain evidence of additional fraudulent documents and are required to be produced for inspection.

Furthermore, ACG's misconduct in running the Norton Ghost Software after the initiation of this action to remove and reinstall files on its computers requires that the Court-ordered computer inspection timeframe of November 1, 2004 to March 31, 2005 be expanded to include all files and e-mails through the present. Fraudulent documents may exist that have metadata dates outside of the Court-ordered timeframe (i.e., creation date of September 24, 2005) because of their removal and re-installation despite the fact that they may have been created and used during the relevant time period for this action.

Therefore, PML respectfully requests this Court to take immediate action and order ACG to produce the above-identified missing items to PML's computer forensic expert at ACG's own expense and modify the Order Regarding Electronic Discovery Protocol to read as follows:

- All local e-mail files, their attachments, storage, any other locally stored e-mail files, and any other system saved/cached files between October 1, 2004 to **the present**;

- All office automation-related files including, but not limited to, files in Microsoft Word, Corel WordPerfect, QuickBooks, and Microsoft Excel between November 1, 2004 to **the present**.

**B.**    **PML Is Entitled to Sanctions Pursuant to Fed. R. Civ. P. 37(a)(4)(A).**

If this Court grants PML's Motion to compel and expand the timeframe for the inspection, PML is entitled to sanctions under Federal Rule of Civil Procedure 37(a)(4)(A). Specifically, the Rule states:

> If the motion is granted . . . the court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees . . .

Federal Rule of Civil Procedure 37(a)(4) authorizes the court to impose upon the party whose conduct necessitated a discovery motion the reasonable expenses incurred by the opponent in making the motion, including attorney's fees, unless the court finds that the party's nondisclosure or objection was substantially justified. *See Watts v. Fed. Express Corp.*, 49 Fed. R. Serv. 3d 1376, 17-18 (W.D. Mich. 2001).

Sanctions are appropriate in the instant matter. ACG's intentional misconduct and abuse of discovery has necessitated the filing of this Motion by PML. ACG's attempted spoliation of evidence, its intentional failure to produce computer equipment, and its use of a software program to delete and alter potential evidence after it received notice of this action justifies the issuance of sanctions in PML's favor. Therefore, PML requests that this Court issue an Order requiring ACG to pay the costs and attorneys' fees they have been forced to incur in filing this Motion, as well as all extra costs incurred by PML for the additional forensic analysis.

17

## IV. CONCLUSION

For the foregoing reasons, PML respectfully requests that this Court grant its Motion and order that:

(A)    ACG produce the following equipment for inspection by PML's computer forensic expert at ACG's own expense: [4]

> (1) Hard Drive identified as 40GB IBM Deskstar HD, model IC2N040ATCS04-0, used on Carlos Brown's laptop;
>
> (2) Hard Drive used on Charles Thomke's computer;
>
> (3) USB Storage Device identified as "Disk&Ven_Memorex&Prod_Thumb Drive& Rev_1.11" and used on Mr. Brown's laptop and one of ACG's desktop computers; and
>
> (4) Back-up Target Disk identified as "\\storage\cbrown" and used when ACG ran Norton Ghost 9.0 Software program.

(B)    The relevant timeframe for the computer inspection be expanded as follows:

> - All local e-mail files, their attachments, storage, any other locally stored e-mail files, and any other system saved/cached files between October 1, 2004 to **the present**;
>
> - All office automation-related files including, but not limited to, files in Microsoft Word, Corel WordPerfect, QuickBooks, and Microsoft Excel between November 1, 2004 to **the present**.

(C)    PML is awarded attorneys' fees and costs, as well as the additional costs that its PML will incur for additional expert forensic analysis, as sanctions against ACG for having to file this Motion.

---

[4] PML plans to file a Motion for Summary Judgment upon the receipt and analysis of the additional equipment and information that has been withheld. Due to timing considerations (i.e., summary judgment motions must be filed by September 14, 2006), PML requests a very short period for ACG to produce these items or an extension of the deadline to file motions for summary judgment, or both if practical considerations dictate.

Respectfully submitted,

BUTZEL LONG

/s/ _____ Katherine D. Goudie _____
Michael G. Latiff (P51263)
Maureen T. Taylor (P63547)
Katherine Donohue Goudie (P62806)
150 West Jefferson, Suite 100
Detroit, MI  48226-4450
(313) 225-7000
E-mail: latiff@butzel.com
        taylorm@ butzel.com
        goudie@butzel.com
Attorneys for Plaintiff

Dated:  August 30, 2006

/866002/

## CERTIFICATE OF SERVICE

I hereby certify that on August 30, 2006, I electronically filed **PLAINTIFF'S MOTION AND BRIEF IN SUPPORT OF MOTION TO COMPEL DEFENDANT ACG ENTERPRISES OF NC, INC.'S PRODUCTION OF COMPUTER EQUIPMENT AND TO EXPAND RELEVANT TIMEFRAME FOR COMPUTER INSPECTION** with the Clerk of the Court using the ECF system which will send notification of such filing to registered counsel.

I further certify that on August 30, 2006, I caused a copy of the foregoing paper and all attachments thereto to be served on each of the following via first class U.S. Mail:

Keith Bishop, Esq.
Madison Center, Suite 105
1802 Martin Luther king, Jr. Parkway
Durham, North Carolina  27707

John Edward Gilchrist, pro se
3325 Chapel Hill Blvd., Suite 145
Durham, NC  27707

Mark A. Haywood, Esq.
Mark A. Haywood & Associates, PLC
1274 Library St Ste 303
Detroit, MI  48226
Co-counsel for Defendant ACG Enterprises of
NC, Inc.

by placing same in a sealed envelope, addressed to said attorney and depositing same in the United States mail in Detroit, Michigan, with postage fully prepaid.

I declare that the foregoing is true and accurate to the best of my information, knowledge and belief.

BUTZEL LONG

/s/_____Katherine D. Goudie_____
Michael G. Latiff (P51263)
Maureen T. Taylor (P63547)
Katherine Donohue Goudie (P62806)
150 West Jefferson, Suite 100
Detroit, MI  48226-4450
(313) 225-7000
E-mail: latiff@butzel.com
        taylorm@ butzel.com
        goudie@butzel.com
Attorneys for Plaintiff