UNITED STATES DISTRICT COURT
IN THE MIDDLE DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PML NORTH AMERICA, LLC,
    Plaintiff

v.

HARTFORD UNDERWRITERS
INSURANCE, et al.
    Defendants

Case No. 05CV70404
Honorable Robert H. Cleland

**MOTION AND BRIEF IN OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND FOR ENTRY OF DEFAULT**

# TABLE OF CONTENTS

Table of Contents ................................................................................................................. i

Table of Cases and Authorities ............................................................................................ ii

Questions Presented ............................................................................................................. 1

STATEMENT OF FACTS ................................................................................................... 2

BACKGROUND .................................................................................................................. 4

ARGUMENT I ..................................................................................................................... 7

Should the Court Enter Judgment by default against Defendant ACG as a sanction pursuant to Rule 37, Fed. R. Civ. P., based on Plaintiff's allegation that ACG disobeyed the Court's September 21st 2006 Order Compelling ACG to produce certain computer equipment?

**PLAINTIFF Answers:**     Yes
**DEFENDANT ACG Answers:**     No.

ARGUMENT II ................................................................................................................... 10

Should this Court grant Summary Judgment in favor of Plaintiff and against Defendant ACG pursuant to Rule 56, Fed. R. Civ. P., based on Plaintiff's contention that there is no genuine issue of material fact that ACG created the fraudulent certificates of insurance and worker's compensation coverage letter?

**PLAINTIFF Answers:**     Yes
**DEFENDANT ACG Answers:**     No.

Summary Judgment Standard of Review ............................................................................. 11

Relevant Claims .................................................................................................................. 12

Analysis ............................................................................................................................... 13

    COUNT III – Unjust Enrichment ................................................................................. 13

    COUNT IV – Promissory Estoppel .............................................................................. 14

    COUNT V – Fraud & Misrepresentation ..................................................................... 16

    COUNT VI – Breach of Contract ................................................................................. 21

Conclusion ........................................................................................................................... 25

Verification .......................................................................................................................... 25

Certificate of Service ........................................................................................................... 26

Index of Exhibits ................................................................................................................. 27

# TABLE OF CASES AND AUTHORITIES

## Cases

Acorn Structures v. Swantz ........................................................................................... 15

Acorn Structures v. Swantz, 846 F.2d 923 (4th Cir. 1988) ......................................... 15

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) ................................................ 13

Bean v. Taylor, 408 F. Supp. 614 (M.D.N.C. 1976) ............................... 21, 22, 23, 24

Booe v. Shadrick, 322 N.C. 567, 369 S.E.2d 554 (1988) ........................................... 15

Cauble v. Trexler, 227 N.C. 307, 42 S.E.2d 77 (1947) ............................................... 21

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ............................................................ 13

Dombrowski v. Eastland, 387 U.S. 82 (1967) ............................................................. 13

Dunston v. Cole, 2003 U.S. Dist. LEXIS 1935 (D.N.C. 2003) .................................... 13

First National Bank of Arizona v. Cities Service Co., 391 U.S. 253 (1968) ......... 14, 18

Food Lion, LLC v. Schuster Mktg. Corp., 382 F. Supp. 2d 793 (E.D.N.C. 2005) .. 18, 20

Forstmann v. Culp, 648 F. Supp. 1379 (M.D.N.C. 1986) ........................................... 17

Harrison v. Westinghouse Savannah River Co., 176 F.3d 776 (4th Cir. 1999) .......... 18

Home Electric Co. v. Hall & Underdown Heating & Air Cond. Co., 86 N.C. App. 540, 358
   S.E.2d 539 (1987) ................................................................................................ 16

In re Virginia Block Co., 16 Bankr. 771 (W.D. Va. 1982) ........................................... 15

Jackson v. Carolina Hardwood Co., 120 N.C. App. 870 (1995) ................................. 15

J. D. Biggs & Co. v. Perkins, 75 N.C. 397 (N.C. 1876) .............................................. 18

Learning Works, Inc. v. The Learning Annex, Inc., 830 F.2d 541 (4th Cir. 1987) ...... 20

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986) .................. 13

Melvin v. Principi, 2004 U.S. Dist. LEXIS 28464 (D.N.C. 2004) ................................. 16

Mitchell v. Data General Corp., 12 F.3d 1310 (4th Cir. 1993) .................................... 13

Mobil Oil Co. v. Padara Jimenez, __ F.2d __, 1993 U.S. App. LEXIS 4648 (4th Cir. 1993) . 9, 10

Morgan's Ferry Prods. LLC v. Rudd, 18 Fed. Appx. 111 (4th Cir. 2001) .................... 18

Mumford v. Trident IA Inv. Pool, __ F.2d __; 1998 U.S. Dist. LEXIS 8153 (M.D.N.C. 1998) . 17

Munday v. Whissenhunt, 90 N.C. 458 (1884) ............................................................. 21

Rice v. Vitalink Pharm. Servs., 124 F. Supp. 2d 343 (W.D.N.C. 2000) ...................... 16

Rowan County Bd. of Educ. v. United States Gypsum Co., 332 N.C. 1, 418 S.E.2d 648 (1992) 18

Standard Fashion Co. v. Grant, 165 N.C. 453, 81 S.E. 606 (1914) .............................................. 21

Swanson v. Chem-Nuclear Sys., 1997 U.S. Dist. LEXIS 16054 (D.N.C. 1997) ......................... 16

Underdown Heating and Air Conditioning Co., 86 N.C. App. 540, 358 S.E.2d 539 (1987) ....... 16

Waggoner v. Western Carolina Pub. Co., 190 N.C. 829 (N.C. 1925) .......................................... 21

Wilson v. Volkswagen of Am., Inc., 561 F.2d 494 (4th Cir. 1977), .............................................. 10

Wrench LLC v. Taco Bell Corp., 256 F.3d 446 (6th Cir.) ............................................................ 15

## Statutes

N.C. Gen. Stat. § 58-89A-110(b) (2005) ....................................................................................... 24

N.C. Gen. Stat. § 58-89A-170 (2004) ........................................................................................... 24

N.C. Gen. Stat. § 58-89A-175 (2004) ........................................................................................... 24

N.C. Gen. Stat. §58-89A-100 (2006) ............................................................................................ 24

## Other Authorities

J. Calamari & J. Perillo, The Law of Contracts § 6-7 p.210 (2d ed. 1977) ................................... 16

## Rules

Fed. R. Civ. P. 56(c). .................................................................................................................... 13

Fed. R. Civ. P. 9(b) ....................................................................................................................... 18

# I
## QUESTION PRESENTED

I Should the Court Enter Judgment by default against Defendant ACG as a sanction pursuant to Rule 37, Fed. R. Civ. P., based on Plaintiff's allegation that ACG disobeyed the Court's September 21st 2006 Order Compelling ACG to produce certain computer equipment?

  **PLAINTIFF Answers:**  Yes

  **DEFENDANT ACG Answers:**  No.


II Should this Court grant Summary Judgment in favor of Plaintiff and against Defendant ACG pursuant to Rule 56, Fed. R. Civ. P., based on Plaintiff's contention that there is no genuine issue of material fact that ACG created the fraudulent certificates of insurance and worker's compensation coverage letter?

  **PLAINTIFF Answers:**  Yes

  **DEFENDANT ACG Answers:**  No.

II

A

STATEMENT OF FACTS

ACG adopts and rejects Plaintiff's statement of facts contained in its Brief at Page VI as follows:

1. Admitted.

2. Denied. Defendant ACG Enterprises of NC Inc. [hereinafter ACG][1] and PML North America, LLC [hereinafter Plaintiff][2] entered into an agreement[3] dated November 17th 2004. The agreement, at Paragraph 3A, provides the following terms:

> "During this Agreement, ACG will maintain workers' compensation coverage for each PML Employee in accordance with the laws of the states in which ACG provides services under this Agreement. . . ."

(Plaintiff's Brief, Exhibit B, Page 3 of 12).

3. Admitted. ACG admits that it imprudently gave this assurance after being assured by RTP that it could secure the required insurance coverage from the Hartford.

4. Admitted.

5. Denied.

6. ACG admits that it did not have an actual policy specimen to provide to PML, but it specifically informed PML of the nature and scope of the policy it had at all times relevant to this action. ACG provided the policy specimen to PML as soon as it received the policy specimen from the Hartford.

7. Admitted.

---

[1] ACG is a North Carolina Corporation located in Durham, North Carolina, where it conducts business. See e.g. Paragraphs 3 of First Amended Complaint and Paragraph 3 of Answer of to ACG Enterprises of NC Inc. to Amended Complaint.
[2] Plaintiff is a Michigan Limited Liability Company located in Shelby Township, Michigan. See e.g. Paragraph 1 of Plaintiff's First Amended Complaint filed on May 10, 2005.
[3] A copy of Plaintiff's Exhibit B is attached hereto as ACG Exhibit 1.

8. ACG denies that the certificates were signed by Michael Carrow. The certificates speak for themselves. Except as denied, ACG admits the remaining allegations.

9. ACG denies that the unsigned letter confirms anything. The document speaks for itself.

10. Admits that ACG received payments from PML pursuant to the Exhibit B instrument.

11. Admitted.

12. Admitted.

13. ACG admits that its counsel's advice memorandum speaks for itself and discloses the illegality of the parties' contract.

14. Denied. ACG admits that it's insuring agreement with Hartford speaks for itself.

15. Agreed.

16. Agreed.

17. Agreed.

18. Agreed. It was the device ACG agreed to provide without a Court Order.

19. Agreed. ACG denies it has possession or control of the device and denies knowledge of the whereabouts of any such device. ACG denies it destroyed the device.

20. Denied.

21. Admitted that certain computers were reformatted after crashing subsequent to viral attacks.

22. Agreed.

23. Agreed.

24. Agreed. ACG admits that the device had crashed and unsuccessful attempts were made to restore function to the hard drive but this occurred some time before

- 3 -

production and ACG failed to recognize and disclose this important detail to its counsel.

25. Admitted that this is Plaintiff's contention. ACG denies this contention.

26. Admitted.

27. Denied. The document speaks for itself.

28. ACG denies any fraudulent conduct as alleged by PML. The document speaks for itself.

29. ACG denies any fraudulent conduct as alleged by PML. The document speaks for itself.

30. Denied.

31. Admitted that this is the contention of Plaintiff's expert.

## B
## BACKGROUND

This case is a breach of contract action. Plaintiff is a Professional Employer Organization [hereinafter PEO], which is licensed to do business in the State of Michigan. Defendant ACG is not a PEO[4] and is only licensed to conduct business as a Temporary Staffing Company[5].

In November 2004 Plaintiff sought the assistance of ACG to secure workers compensation coverage for its own employees in various states at prices it could afford. ACG, with misguided assurances from RTP, believed it could lawfully procure workers compensation coverage in several states and meet the Exhibit B requirements. This belief was mistaken.

---

[4] N.C. Gen. Stat. §§ 58-89A-5, 58-89A-15, 58-89A-25, 58-89A-35, 58-89A-100, 58-89A-110, 58-89A-170, 58-89A-175, and 58-89A-180, which regulate professional employer organizations, are market as ACG EXHIBIT 2 and incorporated herein by reference.

[5] N.C. Gen. Stat. § 58-89A-5 (17) defines temporary employees as persons employed by one organization and assigned to a client company to support or supplement the client's workforce in a special situation including an employee's absence, a temporary skill shortage, a seasonal workload or a special assignment or project.

Plaintiff, without obtaining any workers compensation insurance policy specimen from ACG or ACG's carrier, the Hartford, began to assign employees to various worksites in several states. In doing so, the parties engaged in various acts of offering and accepting post-dated workers compensation coverage certifications. While there is some dispute about the source of the certificates, the parties eventually discovered that their ill-fated enterprise was unlawful.

ACG, not having been licensed as a PEO, sought and received advice from its broker about the nature and scope of its insurance coverage with the Hartford. While there is some dispute about the nature and scope of the advice ACG received from Defendant RTP, the parties engaged in various acts in which ACG acted as a Licensee, Plaintiff acted as a Client, and RTP Insurance acted as the Broker, and all parties unwittingly acted in violation of North Carolina's laws regulating the particular type of business activities involved in this case.

PML knew that ACG had lawful workers compensation insurance coverage in the State of North Carolina. PML knew that at the time it contracted with ACG, ACG had no operation in Michigan[6] or any of the other states where PML conducted business. After one of PML's 'affiliated' company employee suffered a serious workplace injury in New Jersey[7], both parties sought counsel and attempted to adjust their contractual duties[8]. PML initiated suit and now contends that ACG is liable under a contract which is illegal.

PML now seeks to obtain default on the grounds that ACG violated the Court's order compelling discovery. ACG opposes the claims and contentions of Plaintiff and argues that there is no reasonable dispute of any material issue of fact or law that would bar dismissal of Plaintiff's motions and claims.

---

[6] ACG EXHIBIT 3 is ACG's authority to conduct business in the State of Michigan. It is marked as 200021 – 200025.
[7] ACG has not applied for nor received a grant of authority to conduct business in the State of New Jersey.
[8] See e.g. Plaintiff's Exhibit H, which includes ACG's counsel disclosure to Plaintiff that ACG can only perform the contract as a PEO. PML rejected ACG's disclosures and promised a response from its attorneys.

# III
# ARGUMENT

I    Should the Court Enter Judgment by default against Defendant ACG as a sanction pursuant to Rule 37, Fed. R. Civ. P., based on Plaintiff's allegation that ACG disobeyed the Court's September 21st 2006 Order Compelling ACG to produce certain computer equipment?

    **PLAINTIFF Answers:**    Yes

    **DEFENDANT ACG Answers:**    No.

Plaintiff contends that:

> I.    THIS COURT SHOULD ENTER A JUDGMENT BY DEFAULT AGAINST ACG AS SANCTIONS PURSUANT TO FED. R. CIV. P. 37 FOR ACG'S VIOLATION OF THIS COURT'S ORDER AND WILLFUL DESTRUCTION OF EVIDENCE.
>
> ACG's violation of this Court's Order through its failure to produce the critical hard drive and USB storage device, in addition to ACG's destruction of evidence on three hard drives through reformatting, its tampering with the drives, and the perjury committed by Carlos Brown, support PML's request for a judgment by default against ACG.

(Plaintiff's Brief at P. 13).

ACG did not retain an expert in this case because it lacked the resources to do so in this complex commercial contract claim. ACG denies the allegations of fraud. ACG contends that the resources PML has expended in pursuit of the fraud issue constituted a vain exercise. ACG contends that fraud is essentially irrelevant to the dispositive issues in the case. ACG, therefore, incorporates by reference its arguments in opposition to Plaintiff's application for entry of default under Rule 37(d) because the discovery sought is not material to the issues in dispute.

In <u>Mobil Oil Co. v. Padara Jimenez</u>, __ F.2d __, 1993 U.S. App. LEXIS 4648, 7-8 (4th Cir. 1993), the Fourth Circuit Court of Appeals held that four factors are relevant in considering whether a party's discovery violations warrant the sanction of judgment by default:

(1)     whether the noncomplying party acted in bad faith;

(2)     the amount of prejudice caused by his noncompliance (which necessarily includes an inquiry into the materiality of the evidence he failed to produce);

(3)     the need for deterrence of the particular sort of noncompliance; and

(4)     the effectiveness of less drastic sanctions.

Mobil Oil Co. v. Padara Jimenez, __ F.2d __, 1993 U.S. App. LEXIS 4648, 7-8 (4th Cir. 1993), citing Wilson v. Volkswagen of Am., Inc., 561 F.2d 494, 503-04 (4th Cir. 1977), cert. denied, 434 U.S. 1020 (1978). The court noted that these four factors are import because the entry of a default judgment implicates not just a trial court's interest in enforcing its discovery orders, but also a party's right to a day in court. Id. In this case, the Wilson factors will find little support from the objective facts to trigger entry of default in this case.

    The first Wilson factor finds some support if we accept Plaintiff's malignant spin on their expert's interpretation of his findings. A more benign view leads to the conclusion that ACG failed to recognize its duties to safe guard its equipment when confronted with predictable system failures. Plaintiff contends that ACG's conduct was egregious. ACG denies that it acted in bad faith. ACG contends that if the court finds that relevant evidence was destroyed by ACG's incompetent management of its equipment, a trial instruction on spoliation would an appropriate remedy. The facts of this case do not support default in a claim for millions of dollars.

    The second Wilson factor finds less support. The evidence sought in Plaintiff's elaborate and expensive exercise is not material to the germane issues in dispute: Whether the parties had a valid and enforceable contract. Since the Exhibit B instrument in this case sought to procure conduct that would constitute a Class H Felony, the instrument was not enforceable against ACG. The inescapable conclusion to be drawn from this realization is that the discovery

violations asserted as a basis for Entry of Default are not material to the relevant questions of fact or law in dispute in this case.

The third and fourth <u>Wilson</u> factors lack gravity. Discovery must pertain to relevant evidence. In this case the evidence sought is not relevant to the issues in dispute. The issue in dispute revolves around the application of law, not a question of fact.

## **CONCLUSION**

Plaintiff has failed to show that ACG failed to provide discovery that was relevant to a dispositive issue. Plaintiff's motion for Entry of Default pursuant to Rule 37 should be denied.