# ARGUMENT

**II**     Should this Court grant Summary Judgment in favor of Plaintiff and against Defendant ACG pursuant to Rule 56, Fed. R. Civ. P., based on Plaintiff's contention that there is no genuine issue of material fact that ACG created the fraudulent certificates of insurance and worker's compensation coverage letter?

**PLAINTIFF Answers:**         Yes

**DEFENDANT ACG Answers:**     No.

Plaintiff contends as follows:

> **B.     There Is No Genuine Issue of Material Fact That ACG Created the Fraudulent Documents.**
>
> There is no genuine issue of material fact that ACG created the fraudulent documents at issue in this case and breached the Workers Compensation Coverage Agreement. Not only did the computer examination uncover explicit instruction for ACG employees to create fraudulent certificates of insurance, it also uncovered the fraudulent document allegedly faxed by The Hartford and RTP as a Word document with the "fax lines" typed in by ACG.
>
> To prove actionable fraud, fraudulent misrepresentation or inducement, a plaintiff must show the following:
>
>> (1) that the defendant made a material representation; (2) that it was false; (3) that when he made it he knew it was false, or that he made it recklessly without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that the plaintiff should act on it; (5) that the plaintiff acted in reliance upon it; and (6) that the plaintiff thereby suffered injury.
>
> *Kuebler v. Equitable Life Assur. Soc'y of the United States*, 219 Mich. App. 1, 6; 555 N.W.2d 496 (1996).
>
> **Plaintiff's Brief at P. 18.**

A.  **Summary Judgment Standard of Review:**

The summary judgment standard of review under Rule 56 is well established. A party is entitled to judgment as a matter of law upon a showing that "there is no genuine issue of material fact." Fed. R. Civ. P. 56(c). The material facts are those identified by controlling law as essential elements of claims asserted by the parties. A genuine issue as to such facts exists if the evidence forecast is sufficient for a reasonable trier of fact to find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of its case as to which it would have the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).

In evaluating a forecast of evidence on summary judgment review, the court must view the facts and inferences reasonably to be drawn from them in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. When the moving party has carried its burden, the nonmoving party must come forward with evidence showing more than some "metaphysical doubt" that genuine and material factual issues exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986), cert. denied, 481 U.S. 1029, 95 L. Ed. 2d 527, 107 S. Ct. 1955 (1987). A mere scintilla of evidence is insufficient to circumvent summary judgment. Anderson, 477 U.S. at 252. Instead, the nonmoving party must convince the court that, a rational trier of fact could find for the nonmoving party. Id. at 248-49.

Trial is unnecessary if "the facts are undisputed, or if disputed, the dispute is of no consequence to the dispositive question." Mitchell v. Data General Corp., 12 F.3d 1310, 1315-16 (4th Cir. 1993). Dunston v. Cole, 2003 U.S. Dist. LEXIS 1935, 4-6 (D.N.C. 2003). If the evidence is merely colorable, Dombrowski v. Eastland, 387 U.S. 82 (1967) (per curiam), or is

not significantly probative, <u>First National Bank of Arizona v. Cities Service Co.</u>, 391 U.S. 253, 290 (1968), summary judgment may be granted. <u>Anderson</u>, 477 U.S. at 250.

**B.     Relevant Claims:**

ACG has reviewed Plaintiff's complaint and will assume, for purposes of this response, that Plaintiff seeks summary judgment on Counts III, IV, V and VI of the Plaintiff's First Amended Complaint. Count III is premised on a theory of Unjust Enrichment. Count IV is premised on a theory of Promissory Estoppel, Count V is premised on a theory of Fraud and Misrepresentation, and Count VI is premised on a theory of Breach of Contract. ACG denied the allegations in the First Amended Complaint and filed, as its Answer, an affidavit.

The Exhibit B instrument imposed duties on ACG, which included the following:

> 3A.    **Workers' Compensation Coverage.** During this Agreement, ACG will maintain workers' compensation coverage for each PML Employee in accordance with the laws of the states in which ACG provides services under this Agreement. PML assumes full responsibility for the worker's compensation claims of any person employed by PML or providing services for PML, who is not a PML Employee. PML agrees to require any independent contractor it utilizes to provide evidence of current and valid worker's compensation coverage before the independent contractor commences work at PML's worksite or on PML's behalf. PML acknowledges that ACG's workers' compensation insurance carrier and ACG are entitled to periodically audit the employee classification lists, employee rolls and financial records relating thereto for each PML location, to ensure that all PML Employees are classified properly and are being reported for workers' compensation purposes. In the event that ACG finds that PML Employees have been misclassified or have not been reported, PML will immediate reimburse ACG, upon invoice, for charges which otherwise would have been made payable by PML, had such PML Employees been properly classified and reported. PML will also reimburse ACG for any other financial loss or expense incurred as a result of such misclassification or failure to report. If PML uses Sub-Contractors, PML shall maintain a current and valid minimum premium policy (MMP) for Workers' Compensation and list ACG as a certificate holder. PML agrees to furnish ACG with proof of compliance with this obligation. PML agrees that ACG, at its sol discretion, may determine the need for such MMP. Should PML perform work in a state, which allows PML to maintain its own workers' compensation policy, ACG shall be named as an additional insured and a certificate holder on such policy, an where allowed by law, PML shall at no time directly pay any worker's compensation premiums, but shall instead, at least 14 days prior to the premium due date, remit to ACG by ACH wire transfer sufficient to cover the premium due from PML, in order for ACG to submit these funds to the carrier. ACG shall have no responsibility in such situations
>
> PML _AB_        Page _3_ of _12_        ACG _____

(Plaintiff's Exhibit B). ACG did not secure workers compensation insurance coverage required under the above paragraph 3A of the Exhibit B instrument.

C.  **Analysis:**

## COUNT III
## UNJUST ENRICHMENT

In order to state a claim for unjust enrichment, the plaintiff's allegations must set forth that a benefit was conferred on the defendant, that the defendant accepted the benefit, and that the benefit was not gratuitous. Booe v. Shadrick, 322 N.C. 567, 570, 369 S.E.2d 554, 556 (1988), reh'g denied, 323 N.C. 370, 373 S.E.2d 540 (1988). Jackson v. Carolina Hardwood Co., 120 N.C. App. 870, 872 (1995). An action for unjust enrichment is quasi-contractual in nature and may not be brought in the face of an express contract. In re Virginia Block Co., 16 Bankr. 771, 774 (W.D. Va. 1982). Acorn Structures v. Swantz, 846 F.2d 923, 926 (4th Cir. 1988); followed by Wrench LLC v. Taco Bell Corp., 256 F.3d 446, 2001 U.S. App. LEXIS 15097, 2001 FED App. 210P (6th Cir.), 2001 FED App. 0210P (6th Cir.), Copy. L. Rep. (CCH) P28276, 59 U.S.P.Q.2d (BNA) 1434 (6th Cir. Mich. 2001). In this case, the Exhibit B instrument is a specimen of an expressed contract and negates the existence of a quasi-contract.

## CONCLUSION

There is no material dispute that neither North Carolina nor Michigan law will permit Plaintiff, in the face of Exhibit B, to maintain its Count III claim for Unjust Enrichment within the meaning of Acorn Structures v. Swantz and Wrench LLC v. Taco Bell Corp. Plaintiff's claim, therefore for unjust enrichment must fail as a matter of law.

## COUNT IV
## PROMISSORY ESTOPPEL

The doctrine of promissory estoppel is an equitable doctrine wherein a party that has reasonably relied on the promise of another, and whose reliance was both foreseeable and detrimental, may enforce the promise in order to avoid injustice. However, "even if all the elements for a promissory estoppel are present, the Plaintiff will lose unless a given jurisdiction accepts promissory estoppel as a substitute for consideration under the facts of a particular case." J. Calamari & J. Perillo, The Law of Contracts § 6-7 p.210 (2d ed. 1977). Swanson v. Chem-Nuclear Sys., 1997 U.S. Dist. LEXIS 16054 (D.N.C. 1997). North Carolina case law has not approved the doctrine for affirmative relief." Home Electric Co. v. Hall & Underdown Heating & Air Cond. Co., 86 N.C. App. 540, 543, 358 S.E.2d 539 (1987); see Rice v. Vitalink Pharm. Servs., 124 F. Supp. 2d 343, 347 (W.D.N.C. 2000). A Plaintiff may not rely on a theory of promissory estoppel for relief in his case. Melvin v. Principi, 2004 U.S. Dist. LEXIS 28464 (D.N.C. 2004); affirmed __ F2d. __, 141 Fed. Appx. 194, 2005 U.S. App. LEXIS 18089 (4th Cir. N.C. 2005).

The doctrine of promissory estoppel applies in cases where the promisee has not given consideration for a promise, but has reasonably relied, to his detriment, on the promise, and injustice can be avoided only by enforcement of the promise. See Home Elec. Co. of Lenoir, Inc. v. Hall and Underdown Heating and Air Conditioning Co., 86 N.C. App. 540, 542, 358 S.E.2d 539, 540-41 (1987), aff'd, 322 N.C. 107, 366 S.E.2d 441 (1988). In this case, there is no contention that a promisee has not given consideration to support a promise. There is contention that the promise gave consideration in an amount in excess of $38,000.00.

This equitable principle, further, applies in cases were no express contract exists. See e.g. Mumford v. Trident IA Inv. Pool, __ F.2d __; 1998 U.S. Dist. LEXIS 8153, 14-15 (D.N.C.

- 14 -

1998), citing Forstmann v. Culp, 648 F. Supp. 1379, 1384 (M.D.N.C. 1986) (promissory estoppel acts as a substitute for consideration and renders the promise enforceable). Plaintiff asserts and ACG admits that there is an express contract found in Exhibit B. There is no contention of a promise has not given consideration. In fact, there is an express contract, which provides remedies for its breach.

## CONCLUSION

There is an expressed contract found in the Exhibit B instrument. Exhibit B, by its terms, is governed by North Carolina's substantive laws. North Carolina has not approved the use of the doctrine of promissory estoppel for affirmative relief. Under North Carolina law, the doctrine of promissory estoppel may not serve as a theory of recovery in this case.

## COUNT V
## FRAUD AND MISREPRESENTATION

Under North Carolina law, the "essential elements of fraud are:

(1) False representation or concealment of a material fact,

(2) Reasonably calculated to deceive,

(3) Made with intent to deceive,

(4) Which does in fact deceive,

(5) Resulting in damage to the injured party." Rowan County Bd. of Educ. v. United States Gypsum Co., 332 N.C. 1, 418 S.E.2d 648, 658 (1992) All averments of fraud and the circumstances constituting fraud must be stated with particularity. Fed. R. Civ. P. 9(b) Morgan's Ferry Prods. LLC v. Rudd, 18 Fed. Appx. 111, 113 (4th Cir. 2001); Food Lion, LLC v. Schuster Mktg. Corp., 382 F. Supp. 2d 793, 797 (E.D.N.C. 2005). The "circumstances" of a fraud claim that must be pled with particularity include "the time, place, and contents of the false representations, as well as the identity of the person making the representations and what he obtained thereby." Food Lion, LLC, 382 F. Supp. 2d 793, 797, citing Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999).

Plaintiff in this case has alleged that:

38. **"Hartford, ACG and RTP expressly represented to PML that PML either would be provided, or did have, the appropriate worker's compensation coverage that PML had requested, required and paid for.**
39. **The representations that Defendants made to PML were false and made in bad faith.**
40. **Defendant knew the representations were false, or made them recklessly, without knowledge of their truth and with the intention to induce PML into entering the contract at issue and into purchasing the insurance at issue.**
41. **PML acted in reliance on Defendants' false representations and material omissions by entering into the contract and paying the required premiums.**

> **42. As a result of PML's reliance and Defendants' false representations, PML has been damaged . . .**

(Plaintiff's First Amended Complaint at Pages 8-9).

PML makes no particular factual assertions of fraud in the inducement of the contract[9]. Plaintiff's allegations seem to be that it was induced into the contract by the Hartford, ACG and RTP. ACG denied these general allegations in its Affidavit and demanded strict proof thereof.

Assuming, however, only for the sake of argument, that the allegations are true, PML, in order to prevail on its claim for misrepresentation and fraud, must prove that it reasonably relied on the representation that ACG had, could obtain, and could provide workers compensation insurance view of the following facts:

1. ACG was a North Carolina Corporation not authorized to conduct business in Michigan or any other State as a PEO on November 17th 2004[10].

2. ACG could not lawfully obtain workers compensation insurance for Client Companies without first being licensed as a PEO in North Carolina[11].

3. The Hartford could not provide PML with the multi-state workers compensation insurance coverage it sought through ACG as a Client Company[12].

4. Any contract between PML and ACG for multi-state workers compensation insurance coverage would violate North Carolina's laws.

Reasonable detrimental reliance upon a misrepresentation is an essential element of a cause of action for fraud, and such reliance must be pled with particularity. <u>Food Lion, LLC v.</u>

---

[9] A misrepresentation, or a concealment of a fact, arising after formation of a contract, cannot constitute fraudulent inducement to enter into a contract. <u>Grasso v. Berg</u>, ___ F.2d ___, 1997 U.S. App. LEXIS 11929 (4th Cir. 1997), citing <u>Ware v. Scott</u>, 220 Va. 317, 257 S.E.2d 855, 857 (Va. 1979).

[10] See e.g. ACG EXHIBIT 3.
[11] See e.g. ACG EXHIBIT 2, N.C. Gen. Stat § 58-89A-170 (2004).
[12] See e.g. ACG EXHIBIT 2, N.C. Gen. Stat § 58-89A-110 (2005).

Schuster Mktg. Corp., 382 F. Supp. 2d 793, 798 (D.N.C. 2005) quoting Learning Works, Inc. v. The Learning Annex, Inc., 830 F.2d 541, 542 (4th Cir. 1987) (citing Call Carl, Inc. v. BP Oil Corp., 554 F.2d 623, 629 (4th Cir.1977), and Rule 9(b)). In this case, Plaintiff must explain how its reliance on the illegal contract could be reasonable. When Plaintiff rejected the concept of surrendering all of its assigned employees to ACG[13], it rejected the only available option of lawfully salvaging a horribly bad situation. It also articulates its mistaken belief that it could contract with a non-PEO North Carolina corporation for the purposes set out in Exhibit B.

Plaintiff, and indeed ACG, failed to appreciate the scope of the illegality of the November 2004 agreement. PML, apparently unwilling to recognize the unlawfulness of the Exhibit B instrument, now makes the irrational claim that ACG's request to surrender its assigned employees was a scheme to further defraud PML. This rhetoric does nothing to demonstrate the unreasonableness of Plaintiff's professed reliance on any representation by ACG. PML should not close its eyes to facts readily observable by ordinary attention, and maintain for its own advantage the position of victim. The North Carolina Supreme Court has long stated that:

> **The rule of the common law is "caveat emptor", if the article sold is not sound, and if the vendee is fixed with "scienter". Still, if the vendee could have discovered the unsoundness by the exercise of ordinary diligence, he must submit to the loss as a result of his own folly, and the vendor is allowed to retain his ill-gotten gain. The one rule favors good morals; the other rule favors free traffic. Which is the wiser of the two it is not ours to say, for it is settled that "caveat emptor" has been adopted as the law of this State.**

J. D. Biggs & Co. v. Perkins, 75 N.C. 397 (N.C. 1876) citing Brown v. Gray, 51 N.C. 103 (1858) [emphasis added].

---

[13] See e.g. Plaintiff's brief at Page 4.

Plaintiff, in the face of the patent defects in its claims, makes much of its expert's discovery of alleged fraudulent certificates and coverage letters. But assume, for argument sake only, that the coverage letter was fraudulent and the certificates too were fraudulent. These discoveries do nothing to cure the defects in Plaintiff's claim. The certificates on their face contain the following disclaimer:

> **THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMED (SIC), EXTEND OR ALTER THE CEVERAGE AFFORDED BY THE POLICIES BELOW.**

(Plaintiff's Exhibit D, Pages 2 – 48).

The Certificates do not enable ACG to secure or provide the type of insurance called for under Exhibit B without violating North Carolina law. The coverage letter does nothing to cure the parties' illegal venture either. Any good faith belief on the effectiveness of Exhibit B would amount to a mutual mistake about a material fact affecting the contract.

It is a general rule of law that agreements against public policy are illegal and void. Cauble v. Trexler, 227 N.C. 307, 311, 42 S.E.2d 77, 80 (1947); Waggoner v. Western Carolina Pub. Co., 190 N.C. 829, 832 (N.C. 1925) (No action can be maintained on an immoral or iniquitous contract), citing Munday v. Whissenhunt, 90 N.C. 458 (The courts will not paddle in muddy water, but in such cases the parties are remitted to their own folly). Even the United States Supreme Court has recognized the firm and long-established policy not to enforce a contract provision that is contrary to law or public policy. Bean v. Taylor, 408 F. Supp. 614, 620 (M.D.N.C. 1976), affirmed, 534 F.2d 328 (4th Cir. N.C. 1976), citing Standard Fashion Co. v. Grant, 165 N.C. 453, 81 S.E. 606, 607-08 (1914), writ of error dismissed, 239 U.S. 654, 60 L. Ed. 487, 36 S. Ct. 164 (1915) (It is well settled that the courts of a state will not lend their aid to the enforcement of a contract: (1) When the contract in question is contrary to good morals. (2)

When the state of the forum, or its citizens, would be injured by its enforcement. (3) When the contract violates the positive legislation of the state of the forum. (4) When it violates its public policy).

In this case, the public policy of North Carolina is articulated in its statutes regulating professional employer organizations. Public policy would be frustrated by enforcement of contracts made in violation statute. The State and its citizens would be harmed by the enforcement of contracts which frustrate and contravene public policy. Plain and simple, PML, without challenging the constitutionality of North Carolina's statutes, wishes the Federal Courts to enforce a contract that violates North Carolina's laws and overrule the legislative prerogative of the State in its regulatory edicts. This frustration of North Carolina's public policy requires non-enforcement of any such contract. Bean v. Taylor, 408 F. Supp. 614, 621 (M.D.N.C. 1976), affirmed, 534 F.2d 328 (4th Cir. N.C. 1976).

ACG could not perform the contract services without first being licensed as a PEO in North Carolina unless it violated the State's laws. PML, therefore, could not reasonably engage in any detrimental reliance in connection with any contrary representation by ACG. PML has never alleged that ACG claimed that it was a PEO. There is no allegation that ACG claimed that it was authorized to engage in business in Michigan, New Jersey or any other state in November 2004. The only professed declaration in this case is that ACG could provide the Exhibit B service to PML as a PEO when it became licensed.

## CONCLUSION

There is an expressed contract found in Exhibit B. Exhibit B, by its terms, is governed by North Carolina's substantive laws. Exhibit B, by its terms, proposes duties and obligations in violation of North Carolina's laws. Enforcement of Exhibit B would frustrate North Carolina's

public policy. Exhibit B is an illegal contract that is not enforceable. Plaintiff may not, therefore, reasonably rely on any representation about ACG's conduct in pursuit of Exhibit B. There is, therefore, no material factual dispute that Count V of Plaintiff's First Amended Complaint must fail as a matter of law because Plaintiff is unable to prove an essential element of its claim: **reasonable detrimental reliance.** Plaintiff's motion for summary judgment, therefore, should be denied and its claim dismissed.

## COUNT VI
## BREACH OF CONTRACT

Plaintiff contends that ACG entered into a contract to provide workers compensation coverage to PML, its PEO entities and their customers[14]. Plaintiff contends that ACG breached the contract by failing to secure workers compensation coverage. In its brief, Plaintiff makes much of ACG's alleged discovery violations and spends little or no effort explaining why its new theory of liability – discovery violation – is germane to the case at bar. ACG did not intentionally destroy evidence as Plaintiff contends. It is more likely that the destruction resulted from poor administrative control by ACG over its staff and service technicians. In any event, the destruction of the evidence, with which Plaintiff seems feverishly preoccupied, offers little of relevance to the resolution of this case.

The pertinent issue in this case at bar is:

## WHETHER ACG BREACHED A VALID CONTRACT?

Plaintiff offers little substantive analysis on this issue. Plaintiff's analysis is insubstantial because Plaintiff would be hard pressed to discover a valid contract. A cogent analysis would have to begin with the initial examination: **Did ACG have lawful capacity to contract for workers compensation insurance pursuant to the parties' ill-fated contract?** The answer is **NO**,

---

[14] Plaintiff referred to Exhibit A of its First Amended Complaint, which is also Exhibit B of its Motion for Summary Judgment.

because North Carolina law prohibits unlicensed organizations from performing the type of work specified in the Exhibit B instrument. In <u>Bean v. Taylor</u> the Federal District Court stated that:

> **It is not necessary that there should be an express prohibition in a statute to render void a contract made in violation of it. It makes no difference whether the prohibition or command is expressed or implied. Even where the statute does not, in express terms, declare the act unlawful, yet if it appears, from a consideration of the terms of the legislation in question, that the legislative intent was to declare the act unlawful, no contract involving the doing of such an act can be enforced.**

<u>Bean v. Taylor</u>, 408 at 621.

In this case, providing workers compensation insurance in several states may only be accomplished by a PEO Licensee under N.C. Gen. Stat. § 58-89A-110(b) (2005). A person who violates N.C. Gen. Stat. § 58-89A-170 commits a Class H felony. Any officer or controlling person who willfully violates any provision of this Article may be subject to any and all criminal penalties available under State law. N.C. Gen. Stat. § 58-89A-175 (2004).

Plaintiff has also failed to demonstrate that it had a contract which would be valid under Article 89A, Chapter 58 of North Carolina's laws. The Exhibit B instrument, to be enforceable, must comply with the following statute:

---

CHAPTER 58.  INSURANCE
ARTICLE 89A.
NORTH CAROLINA PROFESSIONAL EMPLOYER ORGANIZATION ACT
PART 3.  LICENSEE DUTIES AND RESPONSIBILITIES
N.C. Gen. Stat. §58-89A-100 (2006)

§ 58-89A-100. Contract requirements

A contract between a licensee and a client company shall provide:

(1) That the licensee reserves a right of direction and control over employees assigned to a client company's work sites. However, a client company may retain such sufficient direction and control over the assigned employees as is necessary to conduct the client company's business and without which the client company would be unable to conduct its business, to discharge any fiduciary responsibility that it may have, or to comply with any applicable licensure, regulatory, or statutory requirement of the client company. The PEO agreement shall provide that employment responsibilities not allocated to the licensee by the PEO agreement or this section remain with the client company.

---

> (2) That the licensee assumes responsibility for the payment of wages to the assigned employees as agreed to in the PEO agreement.
>
> (3) That the licensee assumes responsibility for the payment of payroll taxes and collection of taxes from payroll on assigned employees.
>
> (4) That the licensee reserves a right to hire, fire, and discipline the assigned employees.
>
> (5) That the licensee retains a right of direction and control over the adoption of employment policies and the management of workers' compensation claims, claim filings, and related procedures in accordance with applicable federal laws and the laws of this State.
>
> (6) That responsibility to obtain workers' compensation coverage for assigned employees, from an entity authorized to do business in this State and otherwise in compliance with all applicable requirements, shall be specifically allocated in the PEO agreement to either the client company or the licensee. If the responsibility is allocated to the licensee under any such agreement, that agreement shall require that the licensee maintain and provide to the client company, at the termination of the agreement if requested by the client company, records regarding the loss experience related to workers' compensation insurance provided to assigned employees pursuant to the agreement.
>
> **HISTORY:** 2004-162, s. 1.

In this case, Plaintiff made much of ACG's alleged fraud, which in fact is not pertinent. Despite Plaintiff's colorful metaphors – 'caught red handed', 'falsified to show a fake transmission', 'a janitorial staffing company' – which it employed to inflame passions against seemingly immoral conduct, fails in the final analysis explain whether the seemingly 'bad' ACG engaged in conduct constituting breach of a valid contract.

Plaintiff's argument that ACG breached its contract is feeble. Plaintiff begins its argument by stating:

> **To establish a breach of contract claim, Plaintiff must show that there was a valid contract. The requisite elements of a valid contract are: (1) parties competent to enter into a contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation. Citations omitted.**

(Plaintiff's Brief at P. 20).

Plaintiff never addresses itself to the first element: **Whether the parties were competent to**

**enter into the contract?** In this case, North Carolina law prohibited ACG from entering into the ill-fated Exhibit B arrangement.

Plaintiff also conveniently omits any argument about the proprietary of the subject matter or the legality of consideration. Plaintiff commits this omission because it realizes that ACG could only perform the services by committing a Class H Felony under North Carolina law. Plaintiff, further, could only offer consideration that aids and abets the felony. Plaintiff's argument that a valid and enforceable contract existed and was breached is fatally flawed.

Finally, Plaintiff omits any serious analysis regarding the fourth and fifth elements of a valid contract. Plaintiff simply declares in conclusory fashion, indirectly summoning references to its contentions that it paid in excess of $38,000.00 in premiums in exchange for workers compensation, that it did not get the benefit of its bargain. PML essentially is asking the Court to wade in muddy water and, in that enterprise, nullify the legislative policy of the State of North Carolina. Such a request is contrary to the jurisprudence of the Michigan courts, the North Carolina courts and the Federal Courts. Granting PML's request would allow PML to close its eyes to facts readily observable by ordinary attention, and maintain for its own advantage the position of victim when it fails to act prudently in the market place. This case presents no extraordinary circumstances that require drastic relief to reconcile a grave miscarriage of justice. Plaintiff has failed to demonstrate its entitlement to the relief it seeks. Its application for relief should be denied.

## IV
## CONCLUSION

Plaintiff made an ill-fated agreement to purchase workers compensation insurance. The agreement was unlawful. ACG could only perform the contract by committing a Class H Felony. Public policy would be frustrated by enforcement of the agreement. Plaintiff could have discovered this unsoundness by the exercise of ordinary diligence. PML failed to exercise ordinary diligence and, therefore, must submit to the loss as a result of its own folly. Plaintiff's claims, which are unenforceable as a matter of law, should be dismissed.

This 26th day of NOVEMBER 2006

KEITH A. BISHOP, PLLC

/s/Keith A. Bishop
Keith A. Bishop, N.C. Bar No. 18918
**Attorneys for ACG Enterprises of NC Inc.**
1802 Martin Luther King, Jr. Parkway
Suite 105, Madison Center
Durham, North Carolina 27707
(919) 490-1855

## VERIFICATION

I, CARLOS L. BROWN, being duly sworn, depose and say that I am the President of ACG Enterprises of NC Inc., one Defendant in the forgoing action. I have read the foregoing **Motion and Brief in Opposition to Plaintiff's Motion for Summary Judgment**, and the allegations contained therein are true to my own knowledge and belief, save and except those matters set forth upon information and belief, and as to those matters, I verily believe them to be true.

Carlos L. brown, President

**SWORN** to and subscribed before me
This the 27th day of NOVEMBER 2006

NOTARY PUBLIC
My Commission Expires: August 20th 2008

UNITED STATES DISTRICT COURT
IN THE MIDDLE DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PML NORTH AMERICA, LLC,
        Plaintiff

v.

HARTFORD UNDERWRITERS
INSURANCE, et al.
        Defendants

Case No. 05CV70404
Honorable Robert H. Cleland

## CERTIFICATE OF SERVICE

I hereby certify that Defendant ACG Enterprises of NC Inc. has served a copy of its Opposition to The Plaintiff's Motion for Summary Judgment and for Entry of Default all parties as follows:

**BUTZEL LONG**
James Giszcak (P46971)
Michael Latiff (P51263)
**Attorneys for Plaintiff**
150 West Jefferson Street, Suite 100
Detroit, Michigan 48226-4450
(313) 983-7475

**MARK A. HAYWOOD & ASSOCIATES, PLLC**
Mark A. Haywood
**Attorneys for Defendant ACG Enterprises of NC Inc.**
(Local Counsel)
1274 Library Street, Suite 604
Detroit, Michigan 48226
(313) 967-9322

John Edward Gilchrist
d/b/a RTP Insurance & Financial Services
3325 Chapel Hill Blvd., Suite 145
Durham, NC 27707
**PRO SE**

[x]    By U.S Mail, First Class, postage pre-paid and enclosed in a proper wrapper.

This 27th day of NOVEMBER 2006

/s/ Keith A. Bishop
Keith A. Bishop, N.C. Bar No. 18918
**KEITH A. BISHOP, PLLC**
**Attorneys for Defendant ACG Enterprises of NC Inc.**
1802 Martin Luther King, Jr. Parkway
Suite 105, Madison Center
Durham, North Carolina 27707
(919) 490-1855

cc:    ACG Enterprises of NC Inc.