**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

PML NORTH AMERICA, LLC,

    Plaintiff,

v.                                             Case No. 05-CV-70404-DT

ACG ENTERPRISES OF NC, INC.,

    Defendant.
                                        /

**ORDER GRANTING PLAINTIFF'S "MOTION FOR LEAVE TO
AMEND THE COMPLAINT TO ADD CARLOS BROWN AS A DEFENDANT"**

Pending before the court is Plaintiff PML North America, LLC's ("PML's") "Motion for Leave to Amend the Complaint to Add Carlos Brown as a Defendant," filed on June 20, 2007. The matter has been fully briefed and the court concludes that a hearing is not necessary. E.D. Mich. LR 7.1(e)(2). For the reasons stated below, PML's motion will be granted.

**I. BACKGROUND**

This case concerns the genesis of demonstrably false certificates of worker's compensation insurance that were provided to PML in the course of its business dealings with several entities and individuals. The other parties have been dismissed from this litigation, as it is clear that Defendant ACG Enterprises of North Carolina, Inc. ("ACG") must bear responsibility for PML's claims of fraud and breach of contract. The instant question is whether Carlos Brown, ACG's chief executive officer, should also be,

in his individual capacity, liable to PML. PML filed suit on February 2, 2002, alleging claims including fraud and breach of contract.

On December 20, 2006, the court granted PML's motion for summary judgment against ACG, as well as a motion for default judgment against ACG for its electronic discovery abuses. (*See* 12/20/06 Order.) The court found that "the record offers no dispute regarding the willfulness of ACG's materially false representations and PML's detrimental reliance upon them" and that there was also no question of fact that ACG breached the contract. (*Id.* at 17-18.) With respect to the litany of electronic discovery abuses, the court found "a pattern on the part of ACG of evasiveness, obfuscation and tampering with important evidence." (*Id.* at 10.) The court need not recite the instances of misconduct, which notably included the disappearance of a hard drive from Brown's laptop. (*Id.* at 7.) The court found that the wilful discovery abuses, which caused PML significant prejudice, merited the sanction of dismissal and an award of attorney fees. (*Id.* at 9-12.)

The court has since learned that ACG is insolvent and unable to pay the amount of reasonable attorney fees that the court calculated. (*See* 6/1/07 Brown Aff.) Brown avers that (1) ACG has no assets or inventory, (2) it no longer maintains a place of business, (3) the last deposit into its business accounts to liquidate a negative balance occurred in December 2006 and (4) ACG can no longer fund its litigation efforts and can no longer afford representation by counsel. (*Id.* at ¶¶ 11-12, 15, 17.) PML contends that this affidavit is the first notice it received of the financial condition of ACG. (Pl.'s Br. at 6.) ACG intimates that PML knew of ACG's financial condition because (1) "PML's counsel and PML's expert visited ACG's corporate offices in Durham, North Carolina

2

and observed a facility with no staff" and (2) "judgment came after PML contended that ACG was a janitorial service company with an apparent lack of capacity to perform its contract . . . after PML had, through discovery, obtained information about the scope and nature of ACG's operations . . . [and] after PML deposed several of ACG's officers." (Def.'s Resp. at 4.)

PML argues that Brown should be personally liable because (1) he used ACG to perpetrate fraud, (2) he failed to reveal ACG's financial condition while wasting the resources of the court and PML, (3) he had notice of the claims and participated in the litigation and (4) it would be unjust if PML could not collect on its judgment. (*Id.* at 8-11.) ACG responds that PML is not entitled to join Brown as a third party because piercing the corporate veil would be inappropriate in this case and because it would cause great prejudice to Brown. (Def.'s Resp. at 5-8.)

## II. STANDARD

According to Federal Rule of Civil Procedure 15:[1]

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . . . Otherwise a party may amend the party's pleading only by leave of the court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Fed. R. Civ. P. 15(a). Under certain circumstances, Rule 15 allows for post-judgment amendments. *See e.g. Lloyd v. United Liquors Corp.*, 203 F.2d 789, 793 (6th Cir. 1953); *Saalfrank v. O'Daniel*, 533 F.2d 325, 330 (6th Cir. 1976) (holding that post-

---

[1]The court rejects ACG's argument that Rule 14, which governs third-party practice, should apply. PML is not seeking a new counter-claim against Brown. Rather, it seeks to hold him liable for the claims already advanced against ACG by amending the complaint to include Brown in his individual capacity.

3

judgment amendments "may only be done if all parties have notice of the issues being tried and no prejudice will result.") (citations omitted).

### III. DISCUSSION

The court concludes that it is appropriate in this case to pierce the corporate veil and hold Brown to account in his individual capacity. While the parties dispute whether Michigan or North Carolina law should govern, the court would reach the same conclusion applying either state's law. In Michigan, the inquiry hinges upon the equities and the particular facts of each case, balancing whether (1) the corporate entity was simply an instrumentality of the individual, (2) the corporate entity was used to commit a fraud or a wrong and (3) the plaintiff suffered an unjust loss. *Servo Kinetics, Inc. v. Tokyo Precision Instrs. Co. Ltd.*, 475 F.3d 783, 798 (6th Cir. 2007) (citations omitted). The Supreme Court of North Carolina has articulated analogous elements:

> (1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attached so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and
>
> (2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights; and
>
> (3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Glenn v. Wagner*, 329 S.E.2d 326, 330 (N.C. 1985).

Under either case law, it is clear that Brown manipulated ACG to defraud PML and breach their contract, which resulted in an unjust loss to PML. At his deposition, Brown confirmed that he ran ACG and owned all of its shares. (Brown Dep. at 12, Pl.'s

4

Reply at Ex. A.) He had primary responsibility for all insurance certificates that ACG issued. (*Id.* at 13-19, 286-89.) The other employees reported to him and generally had no responsibility for the insurance certificates. (*Id.* at 13-19.) Brown denied that he or anyone at ACG ever created a false insurance certificate or had a template for such certificates, (*id.* at 50, 286), which is belied by the court's findings in its December 20, 2006 opinion and order. Under the circumstances, Brown and ACG are one and the same as far as Plaintiff's claims and the course of this litigation are concerned.

Regarding fraud and illegal activity, the court need only reference its December 20, 2006 order, which details the legion discovery abuses of ACG and Brown. (*See* 12/20/06 Order.) An important computer hard drive from Brown's own laptop was one of the missing items. (*Id.* at 7-8.) Brown appeared and testified at the court's evidentiary hearing. There can be no doubt that Brown used his control of ACG to commit, at a minimum, fraud and breach of contract. While the ultimate amount of damages must still be determined, the court has already found that these actions caused PML loss and therefore the court assessed significant fees and costs to which PML is entitled and which, apparently, ACG may never be in a position to satisfy. Thus, Brown's illicit control of ACG caused PML to suffer unjust loss.

There are other relevant considerations that weigh in favor of allowing PML to amend the complaint to include Brown in his personal capacity. Brown has taken an active role in the litigation by filing affidavits, giving deposition testimony and appearing in court to testify at an evidentiary hearing. He has helped shape the current litigation posture and, significantly, has had full and fair notice of PML's claims. The equities weigh against respecting the corporate formalities of a judgment-proof remnant of a

corporation to insulate Brown's actions done in the guise of ACG. Finally, while PML has obtained judgment, determination of damages remains. ACG claims it can no longer afford representation and thus, as a corporate entity, it can offer no defense or evidence of mitigation. *See* 28 U.S.C.§ 1654; *Doherty v. American Motors Corp.*, 728 F.2d 334, 340 (6th Cir. 1984) ("The rule of this circuit is that a corporation cannot appear in federal court except through an attorney."); *Ginger v. Cohn*, 426 F.2d 1385, 1386 (6th Cir. 1970) ("An officer of a corporation, who is not a licensed attorney, is not authorized to make an appearance in this Court on behalf of the corporation."); *United States v. 9.19 Acres of Land, More or Less, Situate in Marquette County, Michigan,* 416 F.2d 1244, 1245 (6th Cir. 1969) ("The United States District Court was clearly correct in ruling that a corporate president may not represent his corporation before a federal court."). Brown, in his individual capacity, may appear with or without counsel and he may continue to participate in the litigation. In an adversarial system, the court benefits from the presentation of competing views of the facts and the law.

Separately, the court observes that it has personal jurisdiction over Brown. He has sufficient minimum contacts with Michigan through his business dealings. *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945). Brown obtained and maintained commercial contact with PML, a Michigan client, and thus purposely availed himself of the benefits and burdens of the legal system of Michigan. The court sees no jurisdictional basis for denying PML's motion to amend the complaint.

## IV.  CONCLUSION

IT IS ORDERED that PML's "Motion for Leave to Amend the Complaint to Add Carlos Brown as Defendant" [Dkt # 111] is GRANTED.

IT IS FURTHER ORDERED that Defendant Carlos Brown shall notify the court **in writing and no later than August 10, 2007** whether he will proceed *pro se* or through counsel.  If Brown chooses to be represented by counsel, counsel shall make an appearance on the docket **by August 10, 2007**, which shall serve as Brown's required written notification to the court.

        S/Robert H. Cleland
        ROBERT H. CLELAND
        UNITED STATES DISTRICT JUDGE

Dated:  July 26, 2007

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, July 26, 2007, by electronic and/or ordinary mail.

        S/Lisa Wagner
        Case Manager and Deputy Clerk
        (313) 234-5522